## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**ADRIANA PARAMO AND ABRAHAM CASALLAS,**

        **PLAINTIFFS,**

        **vs.**

**IMICO BRICKELL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, ROYAL TITLE & ESCROW COMPANY, INC., A FLORIDA CORPORATION, GARY BARNETT, MARC KWESTEL, MOSHE SPITZER, AND HENRY TERECH,**

**DEFENDANTS.**

_____/

Case No.

# 08-20458-CIV-HUCK/SIMONTON

> FILED by _JC_ D.C.
> ELECTRONIC
>
> **FEB. 21, 2008**
>
> CLARENCE MADDOX
> CLERK U.S. DIST. CT.
> S.D. OF FLA.· MIAMI

## COMPLAINT AND DEMAND FOR JURY TRIAL

## JURISDICTION, VENUE, AND PARTIES

Plaintiff, ADRIANA PARAMO AND ABRAHAM CASALLAS (hereinafter maybe referred to as "Buyers") sues Defendants, IMICO BRICKELL, LLC, A DELAWARE LIMITED LIABILITY COMPANY, (hereinafter maybe referred to as "Seller" or "Developer"), ROYAL TITLE & ESCROW COMPANY, INC., A FLORIDA CORPORATION, (hereinafter maybe referred to as "Escrow Agent"), GARY BARNETT, MARC KWESTEL, MOSHE SPITZER, AND HENRY TERECH, and states:

1.     This is an action arising under the Interstate Land Sales Full Disclosure Act, 15 U.S.C.

§1701-1720 et seq., (hereinafter maybe referred to "ILSFDA") as well as pendent state court

claims for breach of contract, revocation of contract as per the voidability provisions of

Florida statues §718.202(4) and (5), violation of Florida Statutes §718.503, violation of

**Page 1 of 29**

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919 FAX: (954) 659-9937

1 of 55

Florida Statutes §718.506 for the publication of false and misleading information, violating Florida Statutes §849.091(2) for engaging in an illegal pyramid sales scheme, a bill of discovery for the improper use of escrow funds, imposition of constructive trust, imposition of a vendees lien and an equitable lien, interpleader of escrow deposits, and injunctive relief.

2.      Jurisdiction is appropriate pursuant to 28 U.S.C. §1331.

3.      Plaintiff, Adriana Paramo, is over 18 years of age residing in Broward County, Florida and is otherwise sui juris thereof.

4.      Plaintiff, Abraham Casallas, is over 18 years of age residing in Bogota, Columbia and is otherwise sui juris thereof.

5.      Defendant, IMICO BRICKELL, LLC, a Delaware limited liability company (hereinafter may be referred to as "IMICO" or "Developer") is a Foreign limited liability company with its principal place of business in New York, New York doing business in Miami-Dade County Florida.

6.      Defendant, Royal Title 'Escrow' Company, Inc., a Florida corporation (hereinafter maybe referred to as "Royal") is a Florida corporation with its principal place of business in Miami-Dade County, Florida and doing business in Miami-Dade County, Florida.

7.      Defendant, Gary Barnett, (hereinafter maybe referred to as "Barnett") is an individual over 18 years of age who upon information resides in the state of New York and is otherwise sui juris thereof.

8.      Defendant, Marc Kwestel (hereinafter maybe referred to as "Kwestel") is an individual over 18 years of age who upon information resides in the state of New York and is otherwise sui juris thereof.

**Page 2 of 29**
Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

2 of 55

9.     Defendant, Moshe Spitzer (hereinafter maybe referred to as "Spitzer") is an individual over 18 years of age who upon information resides in London, United Kingdom and is otherwise sui juris thereof.

10.    Defendant, Henry Terech (hereinafter maybe referred to as "Terech") is an individual over 18 years of age who upon information resides in the state of Boston, Massachusetts and is otherwise sui juris thereof.

11.    The cause of action accrued in Miami-Dade County, Florida, pursuant to Florida Statute §47.051, and the Defendant, Sellers', and Escrow Agent, are legal entities subject to jurisdiction in Miami-Dade County, Florida.

12.    The real property which is the subject matter of this litigation is located in Miami-Dade County, Florida as set forth in Florida Statute §47.051 in as much as the property at issue the defendants maintain an office in Miami-Dade County, Florida where it transacts its customary business.

13.    The matter in controversy exceeds, exclusive of interest and cost, the sum specified by 28 U.S.C. §1332.

14.    Paragraph 13 of the Condominium Sale and Purchase Agreement specifically states that, "venue for any action, litigation or proceeding arising out of concerning this Agreement shall be in Miami-Dade County, Florida...."

## GENERAL ALLEGATIONS

15.    Defendant, IMICO BRICKELL, LLC, a Delaware limited liability company, is  a developer as defined by 15 U.S.C. §1701(5) of the Interstate Land Sales Full Disclosure Act.

**Page 3 of 29**
Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

3 of 55

16.     Defendant, IMICO BRICKELL, LLC, a Delaware limited liability company, is the developer of "Avenue" now known as "1060 Brickell", a Condominium, where the Unit is located. Defendants, Royal Title & Escrow Company, Inc., a Florida Corporation, Gary Barnett, Marc Kwestel, Moshe Spitzer and Henry Terech are the principal owners, officers, directors and or shareholders, members or managers of the entities or entity compromising the developers. The Defendant's described in this paragraph maybe referred to collectively as "Developer(s)" or "Sellers".

17.     On or about February 25, 2005, Adriana Paramo, executed a contract (see Exhibit "1") for the purchase and sale of real property bearing the following legal description (hereinafter the "Unit(s)"):

> Unit 1215, of 1060 BRICKELL, A CONDOMINIUM, according to the Declaration of Condominium thereof, as recorded January 11, 2008, in Official Records Book 26157, at Page 942, of the Public Records of Miami-Dade County, Florida, as amended and or supplemented from time to time, together with an undivided interest in the common elements appurtenant thereto.

20.     On or about March 16, 2005, Abraham Casallas and Adriana Paramo, executed a contract (see Exhibit "2") for the purchase and sale of real property bearing the following legal description (hereinafter the "Unit(s)"):

> Unit 2803, of 1060 BRICKELL, A CONDOMINIUM, according to the Declaration of Condominium thereof, as recorded January 11, 2008, in Official Records Book 26157, at Page 942, of the Public Records of Miami-Dade County, Florida, as amended and or supplemented from time to time, together with an undivided interest in the common elements appurtenant thereto.

21.     The Unit's legal description only partially describes the interest purchased by the Plaintiffs.

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919 FAX: (954) 659-9937

22.     The Plaintiffs also purchased an undivided interest in the common elements of the condominium.  The common elements of the condominium are situated within the following legal description attached as Exhibit 3.

23.     The Developer described in the sale and purchase agreement attached as Exhibits 1 and 2 are "developer(s)" as defined by 15 U.S.C. §1701(5) of Interstate Land Sales Full Disclosure Act.

24.     The Unit and Condominium as described in the sale and purchase agreement fall under and are inclusive in the definition of a "subdivision" as set forth in 15 U.S.C. §1701(3).

25.     The Developer described in the sale and purchase agreement attached as Exhibits 1 and 2 are "Developer(s)" as defined by Florida Statute §718.103(16).

26.     The Buyer(s) described in the sale and purchase agreement attached as Exhibits 1 and 2 are "purchaser(s)" as defined by 15 U.S.C. §1701(10) of Interstate Land Sales Full Disclosure Act.

27.     The Buyer(s) described in the sale and purchase agreement attached as Exhibits 1 and 2 are "buyer(s)" as defined by Florida Statute §718.103(5).

28.     The Unit described in the sale and purchase agreement attached as Exhibits 1 and 2 are "unit(s)" as defined by Florida Statute §718.103(27).

29.     The Declaration or Declaration of Condominium as set forth in the sale and purchase agreement attached as Exhibits 1 and 2 is a "declaration" or a "declaration of condominium" as defined by Florida Statute §718.103(15).

30.     The Units described in the sale and purchase agreements attached as Exhibits 1 and 2 are part of a "residential condominium" as defined by Florida Statute §718.103(23).

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331  TEL: (954) 659-1919  FAX:  (954) 659-9937

31.     The Units described in the sale and purchase agreements attached as Exhibits 1 and 2 are intended to be conveyed as real property by the Developer in a real property interest consistent with a "condominium" as defined under Florida Statute §718.103(11).

32.     The condominium units described in the sale and purchase agreement attached as Exhibits 1 and 2 are "condominium parcel(s)" as defined under Florida Statute §718.103(12).

33.     The condominium units described in the sale and purchase agreements attached as Exhibits 1 and 2 are within the meaning of "condominium property" as defined under Florida Statute §718.103(13).

34.     In connection with the sale and purchase agreement attached as Exhibit "1", the Plaintiff, Buyers, Adriana Paramo made total deposits with the Developer's escrow agent of $41,200.00 representing twenty percent (20%) of the contract price.

35.     In connection with the sale and purchase agreement attached as Exhibit "2", the Plaintiff, Buyers, Abraham Casallas and Adriana Paramo made total deposits with the Developer's escrow agent of $74,000.00 representing twenty percent (20%) of the contract price.

36.     The undersigned law firm has been retained by the Plaintiffs to represent them in this action and the Plaintiffs have agreed to pay the undersigned law firm a reasonable fee for its services and to reimburse the undersigned law firm for all costs advanced in connection with this action.

37.     All conditions precedent to the filing of litigation in this matter have been met by the Plaintiffs or have been waived.

## COUNT I

### VIOLATION OF 15 U.S.C. §1701 - §1720 et. seq. OF THE INTERSTATE LAND SALES FULL DISCLOSURE ACT (ILSFDA)

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

38.     Plaintiffs are Purchasers as defined by 15 U.S.C. §1701(10) of the Interstate Land Sales Full Disclosure Act.

39.     Pursuant to 15 U.S.C. §1703 of the Interstate Land Sales Full Disclosure Act, a Developer is prohibited from making use of any means of instruments of transportation or communications and interstate commerce, or the mails in connection with the sale of any real property unless a printed property report meeting the requirements of 15 U.S.C. §1703 through 15 U.S.C. §1709 and 24 CFR §1710.100 through 24 CFR §1715.50 is furnished to a purchaser in advance of the signing of the contract or agreement for sale by the purchaser.

40.     Pursuant to 15 U.S.C. §1702(a)(2), the preparations of the ILSFDA do not apply to the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such building thereon within a period of two years.

41.     Defendant did not furnish a Property Report in compliance of 15 U.S.C. §1703 through 15 U.S.C. §1709 and 24 CFR §1710.100 through 24 CFR §1715.50 and instead elected to execute a contract with the Plaintiffs obligating the Defendant to build the condominium within a two year period pursuant to 15 U.S.C. §1702(a)(2).

42.     The "ILSDFA" is intended to protect the public and, pursuant to the Florida Supreme Court, it should be liberally construed in favor of the public[1].

43.     Pursuant to 15 U.S.C. §1702(a)(2), the Developer was obligated to complete the condominium prior to July 1, 2007.

---

[1] The Supreme Court of Florida in *Samara Development Corp. v. Marlow*, 556 So.2d 1097, 1100 (1990), stated, "We note that the Interstate Land Sales Full Disclosure Act was intended to protect the public, and as such should be liberally construed in favor of the public".

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919 FAX: (954) 659-9937

7 of 55

44.     The Defendant failed to complete the unit prior to July 1, 2007 and as such is not exempt from the requirements of "ILSFDA".

WHEREFORE, Plaintiffs respectfully request the following relief:

          a.     a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot, under the terms and conditions of the contract and 15 U.S.C. §1709(c) against all Defendants;

          b.     rescission of the contracts attached as Exhibits 1and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

          c.     such other relief as this Court deems proper against all Defendants.

## COUNT II

## THE DEVELOPER FAILED TO PROVIDE AN UNCONDITIONAL COMMITMENT OR OBLIGATION TO COMPLETE CONSTRUCTION

The Plaintiffs, reaffirm and re-allege paragraphs 1-44 as set forth above.

45.     The Developer attempted to exempt themselves from the ILSFDA under 15 U.S.C. §1702(a)(2) by obligating themselves to erect a building and complete construction within 2 years from the date the Plaintiffs signed the contract for purchase and sale.

46.     The Developer failed to provide in the purchase agreement an unconditional commitment or obligation to the Plaintiffs the complete construction within two years based on paragraphs 46 through 51 below.

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

47.    Paragraph 28 of the contract for purchase and sale provides a way and or method for

the Seller to cancel the agreement for construction:

> Pre-Sale Contingency, Completion Date and Closing Date:
> Not withstanding the foregoing and any other contrary provision of
> this Agreement, Seller shall have the right, in Seller's sole discretion,
> to cancel this Agreement and cause Purchaser's deposits to be
> refunded in the event that Seller does not procuring qualified
> purchase contracts with a minimum aggregate gross sales price as
> required by any loan agreement Developer may have with its lender.

48.    Paragraph 8 of the contract of purchase and sale provides further restrictions upon the

Purchaser which limits its remedies at law and or equity.  Paragraph 8(e) states:

> Seller's Default.  If Seller defaults in the performance of this Contract,
> Purchaser shall give Seller written notice of such default, and if Seller,
> within twenty (20) days from receipt of such notice shall fail to take
> action would cure the default within a reasonable period of time, and if
> Purchaser has performed all of his obligations hereunder, then
> Purchaser shall be entitled all remedies under the law, except
> consequential damages or special damages.

49.    Paragraph 15 of the contract for purchase and sale provides further conditions on the

completion and closing date.  Paragraph 15 states:

> Construction By Seller.  Purchaser fully understands and is aware that
> Seller anticipates that the building will be completed within the
> estimated completion dates set forth in the Contract, but cannot
> provide a fixed date for occupancy, by reason of factors influencing
> the rate of completion such as, but not Limited to, Acts of God, strikes,
> war, availability of material, order of a court of competent Jurisdiction
> and the Like.  Accordingly, this transaction shall be closed at such
> time as a Temporary Certificate of Occupancy has been issued, upon
> notification of Purchaser by Seller, at a time, date and place as
> specified in such notice, which date shall be not less than fifteen (15)
> days from the date of such notice.

50.    Paragraph 6 of the contract for purchase and sale provides further conditions on the

completion and closing date.  Paragraph 6(b) states:

> Time of Closing. This transaction shall close subsequent to Seller's
> obtaining the temporary Certificate of Occupancy from the proper

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919 FAX: (954) 659-9937

Governmental agency responsible for issuing said Certificate on the floor in the building in which the Unit is situated.  Seller shall give fifteen (15) days written notice of the closing date to Purchaser at Purchaser's address as same appears on the signature page hereof.  Issuance of said Certificate for the Condominium shall constitute conclusive evidence of substantial completion of the Unit, as provided in this Contract. The fact the there may be minor items to be corrected or completed shall not delay nor postpone the Closing nor require the holding of any portion of the purchase price in escrow until the completion thereof.  In the event the closing is delayed for any reason (except for delay desired, requested or caused by Seller), and Seller elects, at Seller's sole discretion, to reschedule the closing, Purchaser agrees to pay at closing a late funding charge equal to interest, at the then highest applicable lawful rate, on the portion of the purchase price that would have been paid to Seller or to Seller's order (including any mortgage payoffs) if the transaction contemplated herein had been timely consummated as originally scheduled by Seller, from the date Seller originally scheduled closing to the date of actual closing or, at Seller's option, Seller may impose a late charge equal to Fifty and No/100 ($50.00) Dollars to cover administrative and other expenses for each day Seller agrees to postpone the closing.  All pro-rations will be made as of the originally scheduled date.  Purchaser understands that Seller is not required to reschedule or to permit a delay in closing.

51.    Paragraph 29 of the contract for purchase and sale provides further conditions on the

completion and closing date.  Paragraph 29 states:

Florida Law; Severability; Interstate Land Sales. Any disputes that develop under this Agreement will be settled according to Florida law. If any part of this Agreement violates a provision of applicable law, the applicable law will control.  In such case, however, the rest of the Agreement (not in violation) will remain in force.

Without limiting the generality of the foregoing, it is Purchaser's and Seller's mutual desire and intention that all provisions of this Agreement be given full effect and be enforceable strictly in accordance with their terms. If however, any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement, in its entirety, unenforceable, the unenforceable part of parts are to judicially modified, if at all possible, to come as close as possible to the expressed intent of such part or parts (and still be enforceable without jeopardy to other parts of this Agreement, or this Agreement in its entirety), and then are to be enforced as so modified. If the

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

unenforceable part or parts cannot be so modified, such part or parts will be unenforceable and considered null and void in order that the mutual paramount goal (that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms) can be achieved.

Without limiting the generality of the foregoing, if the mere inclusion in this Agreement of language granting to Seller certain rights and powers, or waiving or limiting any of Purchaser's rights or powers or Seller's obligations (which otherwise would be applicable in the absence of such language), results in a final conclusion (after giving effect to the above judicial modification, if possible) that Purchaser has the right to cancel this Agreement and receive a refund of his deposits, such offending rights, powers, limitations and/or waivers shall be struck, canceled rendered unenforceable, ineffective and null and void. Under no circumstances shall either Purchaser or Seller have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement (other than language which is intended specifically to create such a cancellation right).

The following sentence will supersede and take precedence over anything else in this agreement which is in conflict with it: If any provisions serve to: (1) limit or qualify Seller's substantial completion obligations as stated in paragraph 28, or (2) limit Purchaser's remedies in the event that such obligations are breached, or (3) grant Seller an impermissible grace period, and such limitations or qualifications are not permitted if the exemption of this sale from the Interstate Land Sales Full Disclosure Act pursuant to 15 U.S.C.§1702(a)(2) is to apply or this Agreement is to otherwise be fully enforceable, then all those provisions are hereby stricken and made null and void as if never a part of this Agreement.

52.     Paragraphs 47 through 51 which quote Exhibits 1 and 2 verbatim do not place an unconditional commitment upon the Developer to complete construction within two years and deliver the Units to the Plaintiffs.

53.     Because of the foregoing the Developer is not exempt from ILSFDA and must comply with all its provisions and regulations.

54.     Due to the fact that the Developer is not exempt from the ILSFDA a Property Report must be furnished to the Buyers in accordance with 15 U.S.C. §1703(a)(1)(B).

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

55.    Due to the fact that the Developer is not exempt from the ILSFDA a statement of "Record" must be registered in accordance with 15 U.S.C. §1704 through §1707, 24 CFR §1710.100 through 24 CFR §1715.50 and 24 CFR Ch. X, and 15 U.S.C. §1703(a).

56.    The Property Report must adhere to the standards and regulations promulgated under 15 U.S.C. §1704 through §1707, 24 CFR §1710.100 through 24 CFR §1715.50 and 24 CFR Ch. X, and 15 U.S.C. §1703(a).

57.    The Record and Property Report are deficient and fail to adhere to the standards and regulations promulgated under 15 U.S.C. §1704 through §1707, 24 CFR §1710.100 through 24 CFR §1715.50, and 24 CFR Ch. X and 15 U.S.C. §1703(a).

58.    Specifically the Property Report is deficient and fails as set forth in Count III of this Complaint and the Plaintiff alleges paragraphs 60 through 72 as fully set forth herein.

59.    The foregoing allegations in this count constitute the Developer employing a device, scheme or artifice to defraud the Plaintiffs under 15 U.S.C. §1703(a)(2)(A) as set forth in this count.

WHEREFORE, Plaintiffs respectfully request the following relief:

    a.    a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot, under the terms and conditions of the contract and 15 U.S.C. §1709(c) against all Defendants;

    b.    rescission of the contracts attached as Exhibits 1and 2 and that their duties and or obligations be discharged under the terms and

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

conditions of their contract and any addenda thereof, against all Defendants; and

c.        such other relief as this Court deems proper against all Defendants.

**COUNT III**

**PROPERTY REPORT DOES NOT ADHERE TO REGULATIONS UNDER ILSFDA**

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

60.      The Developer delivered a Property Report which contained an untrue statement of material fact or omitted to state material fact required to be stated pursuant to 24 CFR §1710.216(b) regarding the price range of Units (lots) in this subdivision as well as other provisions under 24 CFR §1710.216.

61.      The Developer delivered a Property Report which contained an untrue statement of material fact or omitted to state and material fact required to be stated pursuant to 24 CFR §1710.216(b) regarding the price range of Units (lots) in this subdivision as well as other provisions under 24 CFR §1710.116(d)(2) and (3).

62.      The Developer delivered a Property Report which contained an untrue statement of material fact or omitted to state and material fact as required to be stated pursuant to 24 CFR §1710.216(b) regarding the price range of Units (lots) in this subdivision, as well as other provisions under 24 CFR §1710.117(a) in that the Plaintiffs were not provided a cost sheet in accordance with the above mentioned regulation.

**Page 13 of 29**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,   Weston, Florida 33331  TEL: (954) 659-1919   FAX: (954) 659-9937

13 of 55

63.     The Developer engaged in the practice, or course of business which operates or would operate as a fraud or deceit upon the Plaintiffs under 15 U.S.C. §1703(a)(2)(C).

64.     The Developer failed to make a statement of the general terms and conditions, including the range of selling prices at which it proposed to dispose of the lots in this subdivision as per 15 U.S.C. §1705(4).

65.     The Developer failed to include copies of all forms of conveyance to be used in the selling of the units to purchasers under 15 U.S.C. §1705(9).

66.     The Developer or its agents engage in misleading sales practices by engaging in conduct or advertising to induce the Plaintiffs to buy their Units in violation of 24 CFR §1715.10.

67.     That the Developer or its agents gave the Property Report to the purchasers along with other materials done in such a manner so as to conceal the Property Report from the Plaintiffs in violation of 24 CFR 1715.20(a).

68.     That the Developer or its agents gave the contract for purchase and sale to the Plaintiffs or encouraged Plaintiffs to sign other documents before delivery of the Property Report in violation of 24 CFR 1715.10(b).

69.     That the Developer or its agents made representations or engaged in misleading sales practices that implied that the Developer will deliver the Unit by July 1, 2007, with the intention or knowledge that delivery was impossible by that date in violation of 24 CFR 1715.25.

70.     That the Developer or its agents made representations that implied that the Developer will resell the Units without actually having an ongoing program for doing so in violation of 24 CFR 1715.25(o).

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919 FAX: (954) 659-9937

71.     That the Developer failed to include in the statement of record such other information and such other documents and certifications as the Secretary may require as being reasonably necessary or appropriate for the protection of purchasers pursuant to 15 U.S.C. §1705(12).

72.     That all violations under this count have occurred as a result of a violation(s) pursuant to 15 U.S.C. §1703(a)(2)(A), (B), and (C).

73.     The foregoing violations as set forth is this count constitute the Developer employing a device, scheme or artifice to defraud the Plaintiffs under 15 U.S.C. §1703(a)(2)(A) as set forth in this count.

WHEREFORE, Plaintiffs respectfully request the following relief:

a.      a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot, under the terms and conditions of the contract and 15 U.S.C. §1709(c) against all Defendants;

b.      rescission of the contracts attached as Exhibits 1 and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

c.      such other relief as this Court deems proper against all Defendants.

## COUNT IV

### BREACH OF CONTRACT

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

74.    Seller disclosed pursuant to paragraph 28 of the contract for purchase and sale that the Unit would be "substantially complete" by July 1, 2007.

75.    The Buyers relied on the seller's statements pursuant to paragraph 28 of the contract for purchase and sale as an inducement for entering into and executing the contracts attached as Exhibits 1 and 2 and that this statement was material to the terms and conditions of the contracts.

76.    The Seller failed to deliver by July 1, 2007 and as a result thereof the Buyers have been damaged by the Seller's delay.

77.    Pursuant to paragraph 21 of the contract for the purchase of sale time is of the essence of this contract.

WHEREFORE, Plaintiffs respectfully request the following relief:

        a.      a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees and costs under the terms and conditions of the contract and Florida Statute §57.105 against all Defendants;

        b.      rescission of the contracts attached as Exhibits 1 and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

        c.      such other relief as this Court deems proper against all Defendants.

## **COUNT VII**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,   Weston, Florida 33331  TEL: (954) 659-1919   FAX:  (954) 659-9937

## VIOLATION OF FLORIDA STATUTE §718.506 FOR THE PUBLICATION OF FALSE AND MISLEADING INFORMATION

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

78.     The Plaintiffs reasonably relied upon material statements or information that were false or misleading and were published by or under the authority from the Developer in advertising and or promotional materials, the property report, the record, a prospectus under Florida Statute §718.504, the items required as exhibits to the prospectus, brochures, and or newspaper advertising.

79.     The Plaintiffs paid value toward the purchase of the Units which is a condominium parcel as set forth under Florida Statute §718.506(1).

80.     Florida Statute 718.506(1) reads in pertinent part:

### 718.506  Publication of false and misleading information.

(1) Any person who, in reasonable reliance upon any material statement or information that is false or misleading and published by or under authority from the developer in advertising and promotional materials, including, but not limited to, a prospectus, the items required as exhibits to a prospectus, brochures, and newspaper advertising, pays anything of value toward the purchase of a condominium parcel located in this state shall have a cause of action to rescind the contract or collect damages from the developer for his or her loss prior to the closing of the transaction.

81.     The Developer failed to build the Unit and failed to adhere to the their  promises, statements, disclosures, plans, specifications, and or drawings as set forth in the contract for purchase and sale, Prospectus, Property Report, or offering circular and all related provisions under Florida Statue §718.504 and therefore violated Florida Statute §718.506 .

WHEREFORE, Plaintiffs respectfully request the following relief:

**Page 17 of 29**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX:  (954) 659-9937

17 of 55

a.      a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees and costs under the terms and conditions of the contracts, Florida Statute §718.506(2), and Florida Statute §57.105 against all Defendants;

b.      rescission of the contracts attached as Exhibits 1 and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

c.      such other relief as this Court deems proper against all Defendants.

## COUNT VIII

### DECLARATORY JUDGMENT

### VIOLATION OF FLORIDA STATUTE §849.091(2) - PYRAMID SALES SCHEME

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

82.     This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 of an actual substantial justiciable controversy as set forth in this Complaint.    Plaintiff seeks judgment that the contract is void or voidable because said contract violates Florida Statute §849.091(2).

83.     The contracts attached as Exhibits 1 and 2 was part of a "pyramid sales scheme" in violation of Florida Statute §849.091(2).

84.     Florida Statute §849.091(2) reads in pertinent part:

> (2) A "pyramid sales scheme," which is any sales or marketing plan or operation whereby a person pays a consideration of any kind, or makes an investment of any kind, in excess of $100 and acquires the opportunity to receive a benefit or thing of value which is not primarily contingent on the

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,   Weston, Florida 33331  TEL: (954) 659-1919  FAX: (954) 659-9937

volume or quantity of goods, services, or other property sold in bona fide sales to consumers, and which is related to the inducement of additional persons, by himself or herself or others, regardless of number, to participate in the same sales or marketing plan or operation, is hereby declared to be a lottery, and whoever shall participate in any such lottery by becoming a member of or affiliating with, any such group or organization or who shall solicit any person for membership or affiliation in any such group or organization commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. For purposes of this subsection, the term "consideration" and the term "investment" do not include the purchase of goods or services furnished at cost for use in making sales, but not for resale, or time and effort spent in the pursuit of sales or recruiting activities.

85.    The Plaintiffs were required to make an investment of a "deposit" in which they acquired the opportunity to receive a benefit or thing of value as stated as a Unit under the sale and purchase agreements attached as Exhibits 1 and 2.

86.    This thing of value which is the Unit is not primarily contingent on the volume or quantity of goods, services, or other property sold in bona fide sales to consumers under Florida Statute §849.091(2).

87.    The Plaintiffs, Buyers acquired the opportunity to receive the Unit which is the benefit or thing of value and which is related to the inducement of additional persons by others under Florida Statute §849.091(2).

88.    The Developer, not the Buyers, induced additional persons to buy other units in the building where the Buyer's Unit is located as set forth under the sale and purchase agreement attached as Exhibits 1 and 2.

89.    The Buyers acquired the opportunity to receive the Unit which is the benefit or thing of value under Florida Statute §849.091(2) regardless of the number of others that participated in the same sales or marketing plan or operation.

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331  TEL: (954) 659-1919  FAX: (954) 659-9937

90.     The sales and purchase agreements attached as Exhibits 1 and 2 under paragraph 28 called for the requirements of presales of units in the Condominium that may be established by the Lender.

91.     Under paragraph 28 the Developer had a right in the Developer's sole discretion to cancel the agreement and cause the Buyer's deposit to be refunded in the event that the Developer does not meet the requirements for presales of units in the Condominium that may be established by the Lender providing construction financing for the development of the Condominium.

92.     The Buyer's opportunity was related and contingent upon the Developer inducing other persons to participate in the same "sales or marketing plan".

93.     The Developer offered a resale program to perpetuate the "sales or marketing plan" under Florida Statute §849.091(2).

94.     Without the Buyer's knowledge, the Developer under paragraph 28 induced other buyers to make an investment and obligate themselves under a contract for sale and purchase for a Unit thereby violating Florida Statute §849.091(2), a misdemeanor of the first degree and thus would render the agreement attached as Exhibits 1 and 2 void.

95.     The Developer in their "pyramid sales scheme" raised prices thereby causing artificially inflated pricing which adversely affected the Buyers and all other buyers under contract and all future prospective buyers.

WHEREFORE, Plaintiffs respectfully request the following relief:

> a.     a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys'

**Page 20 of 29**
Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

20 of 55

fees and costs under the terms and conditions of the contracts, Florida Statute §718.506(2), and Florida Statute §57.105 against all Defendants;

b.      a judgment declaring that the contracts attached as Exhibits 1 and 2 are void and rescinding the contracts;

c.      rescission of the contracts attached as Exhibits 1 and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

d.      such other relief as this Court deems proper against all Defendants.

**COUNT IX**

**BILL OF DISCOVERY – IMPROPER USE OF ESCROW FUNDS**

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

96.      The contracts between the Plaintiffs and Developer provides that the Developer may utilize the amount of the deposits paid in excess of 10% of the purchase price for construction purposes.

97.      Florida Statute §718.202(3) provides that if the Developer/developer uses any of the deposit money for the purposes other than construction purposes such as salaries, commissions, or expenses of salespersons or for advertising purposes that Buyers is entitled to the return of the deposit together with interest.

98.      Pursuant to Florida Statute §718.202(3), the Buyers has the right to the return of their deposit plus interest in the event that the Developer/developer used any of the deposit money for non-construction purposes.

**Page 21 of 29**

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive, Weston, Florida 33331 TEL: (954) 659-1919 FAX: (954) 659-9937

21 of 55

99.     The only way for the Buyers to determine if the deposit money was used for a purpose other than construction or was commingled in an account used to pay for anything other than construction is to conduct discovery.

100.    The Buyers has a good faith belief that the Developer may have co-mingled the deposit money into accounts used for both construction and the payment of non-construction expenses such as salaries, commissions, advertising or other non-construction uses or purposes.

> WHEREFORE, the Plaintiffs, includes this count in order to pursue its discovery rights and reserves the right to seek a court approved amendment of the complaint should the discovery reveal, as expected, that the escrow deposits were improperly used in violation of the Florida Statutes.

## COUNT X

### CONSTRUCTIVE TRUST, VENDEES LIEN, AND EQUITABLE LIEN

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

101.    Buyer's deposit money was obtained pursuant to void, voidable, illegal,  and  or validly revoked contracts.

102.    Some and or all of the Buyer's deposit in excess of 10% was used to construct the unit, condominium, condominium parcel, and or the condominium property.

103.    Plaintiffs are entitled to the return of their earnest money deposit based on Defendants violations of ILSFDA and the other Counts as set forth in this complaint as alleged above.

104.    Defendants have refused to return the earnest money deposit to Plaintiffs.

105.    Because the Plaintiffs did not receive the return of their earnest money deposit, they continue to have an equitable interest in the Units, an undivided interest of the common areas

**Page 22 of 29**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,   Weston, Florida 33331  TEL: (954) 659-1919  FAX:  (954) 659-9937

22 of 55

of the condominium known as the Avenue, A Condominium, condominium parcel, and condominium property as described in the attached Exhibit 3,  and the escrow deposits being held by Royal, .

106.    Plaintiffs owns and holds an equitable lien on the Units and the escrow deposits being held by Royal.

107.    Plaintiffs have recorded or will soon be recording a *lis pendens* to secure their earnest money deposit and equitable interest in the Units, an undivided interest of the common areas of the condominium known as the Avenue, A Condominium, condominium parcel, and condominium property as described in the attached Exhibit 3.

108.    Plaintiffs are entitled to a constructive trust against Royal and an equitable or vendee's lien imposed against the Units, condominium, condominium parcel, and the condominium property for the amounts of their deposit used to construct the building and improve the condominium parcel, attorneys fees, court costs, relief under the ILSFDA and for prejudgment interest at the legal rate.

WHEREFORE, Plaintiffs respectfully request the following relief:

>    (a)    a judgment and imposition by this court establishing a constructive trust against Royal and an equitable lien and or vendees lien against the Units, condominium, condominium parcel, and the condominium property for the amounts of the deposit used to construct the building, attorneys fees, court costs, relief under the ILSFDA, and for prejudgment interest at the legal rate;

>    (b)    such other relief as this Court deems proper against all Defendants.

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

## COUNT XI

### DECLARATORY JUDGMENT – CONTRACT VIOLATES STATUTE OF FRAUDS

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

109.    This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 of an actual substantial justiciable controversy as set forth in this Complaint.  Plaintiff seeks judgment that the contract is void or voidable because said contract violates Florida Statute §725.01.

110.    At the time the sale and purchase agreement attached as Exhibits 1 and 2 was entered into between the Buyers and Developer the condominium declaration was not recorded and the condominium therefore did not legally exist.

111.    The sale and purchase agreement attached as Exhibits 1 and 2 did not contain a legal description of the property in recordable form sufficient for the property being purchased by the Buyers to be identified to fulfill the requirements of Florida Statute §725.01.

112.    The sale and purchase agreement attached as Exhibits 1 and 2 are unenforceable as a result of the statute of frauds as set forth in Florida Statute §725.01 and the Buyers are entitled to the return of their deposits.

WHEREFORE, Plaintiffs respectfully request the following relief:

> (a)      a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees and costs under the terms and conditions of the contracts and Florida Statute §57.105 against all Defendants;

> (b)      a judgment declaring that the contracts attached as Exhibits 1 and 2 are void and rescinding the contracts;

Jonathan Kline, P.A., Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX:  (954) 659-9937

(c)      rescission of the contracts attached as Exhibits 1 and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

(d)      such other relief as this Court deems proper against all Defendants.

## COUNT XII

### DECLARATORY JUDGMENT
### THERE IS NO ENFORCEABLE CONTRACT

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

113.    This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 of an actual substantial justiciable controversy as set forth in this Complaint.  Plaintiff seeks judgment that the contract is void or voidable because said contract fails for indefiniteness and the developer's obligation under the contract illusory.

114.    The sale and purchase agreement signed by the Buyers contain specific provisions allowing for a deviation of the "Developers Plans and Specifications".

115.    Paragraphs 14 and 15 to Contract for Purchase and Sale attached as Exhibits 1 and 2 give the developer such broad discretion to make changes in the condominium and units that for all intents and purposes, the contract does not provide a sufficient description of what the end product is and what the Buyers will be receiving to make the contract enforceable.

116.    A contract fails for indefiniteness where the promises and performance to be rendered by a party to the contract are not reasonably certain.

117.    The promises and performance to be rendered by the developer under the contracts are not reasonably certain as the Developer/developer reserved such a broad discretion to make

**Page 25 of 29**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

25 of 55

changes to the product being sold that it cannot be said that the contract is reasonably certain as to the developer's obligation to perform.

118.    Because the Developer/developer has such a broad range of discretion to change what the Buyers is getting under the contract, the Buyers do not know what the Buyers is ultimately getting under the contract.

119.    Therefore, there is no meeting of the minds sufficient for a binding contract to exist.

120.    As a result of the developer's broad discretion to make changes to the product being sold, the product being sold is not definite enough to form the basis for a contract and the contract therefore fails for indefiniteness.

121.    The Developer/developer's discretion to make changes to the product being sold is so broad as to make the developer's obligation under the contract illusory.

122.    To further emphasize the point, the Buyers could not enforce the contract by specific performance where the contract is susceptible to such vast and extreme changes at the discretion of the Developer.

123.    As a result of this extreme and vast discretion of the Developer to make changes to the end product that is being sold, it would be impossible for the Buyers to be able to sue to recover damages for a breach by the developer.  If for example, the Developer's failure to complete construction of the condominium, there would be no way for the Buyers to ascertain the amount of the damages since it would be impossible to predict what the end product would be that the Buyers failed to receive.

124.    The law is clear that where there is an insufficient description of the quantity and or other material characteristics of the product being sold, the contract for the sale of that product is unenforceable as being insufficient as a matter of law.

**Page 26 of 29**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,   Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

26 of 55

125.   Because the developer's discretion to make changes to the condominium are so broad, it would be unconscionable for the developer to have the right to enforce the contract against plaintiff.

126.   The developer's right to cancel the contract unilaterally during the presale period also makes the developer's obligation to build the condominium illusory.

127.   Because the developer's right to cancel the contract during the presale period is unilateral and is not also provided to the plaintiff, the contract fails for lack of mutuality of obligation.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a)   a judgment requiring the Defendants to return their earnest money deposit and interest, court costs, reasonable amounts for attorneys' fees and costs under the terms and conditions of the contracts, and Florida Statute §57.105 against all Defendants; a judgment declaring that the contracts attached as Exhibits 1 and 2 are void and rescinding the contracts because the contracts fail for (1) indefiniteness, (2) lack of meeting of the minds, (3) illusory obligation, (4) lack of mutuality of obligation and remedy and (5) unconscionablility;

(b)   rescission of the contracts attached as Exhibits 1 and 2 and that their duties and or obligations be discharged under the terms and conditions of their contract and any addenda thereof, against all Defendants; and

(c)   such other relief as this Court deems proper against all Defendants.

**Page 27 of 29**
Jonathan Kline, P.A., Attorney at Law,  2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

27 of 55

## COUNT XIII

### INTERPLEADER OF ESCROW DEPOSIT

The Plaintiffs, reaffirm and re-allege paragraphs 1-37 as set forth above.

128.    The Plaintiffs and Developer executed a contract for the purchase and sale of real estate, a copy being attached as Exhibits 1and 2 under which escrow agent, Royal, is holding an escrow deposit.

129.    A dispute has arisen between the Buyers and the Developer/Seller concerning performance under the contract.

130.    Plaintiffs contend that the Developer acted under the terms and conditions of the contract in bad faith as well as in violation of the above federal and state laws alleged in this complaint.

131.    The escrow agent has no interest in the deposit and did not cause the conflicting claims between the Buyers and the Developer.

132.    We disagree with the Escrow Agent charging any amount of money for attorney's fees to defend this matter.

WHEREFORE, Buyers demand an order of interpleader and judgment for Buyer's attorney's fees under Florida Statute §57.105 and paragraph 12 of the Contract for Sale and Purchase attached as Exhibits 1 and 2.

### DEMAND FOR JURY TRIAL

The Plaintiffs, Buyers, demand a jury trial for all counts in this action.

Dated: February 19, 2008.

Jonathan Kline, P.A., Attorney at Law, 2761 Executive Park Drive,  Weston, Florida 33331 TEL: (954) 659-1919  FAX: (954) 659-9937

By: Jonathan Kline, Esq.
Florida Bar No.: 6092
E-mail address: Jonathan.Kline@JKLawFL.com

Jonathan Kline, P.A.
2761 Executive Park Drive
Weston, Florida 33331
(954) 659-1919 Telephone
(954) 659-9937 FAX
Attorney for Plaintiffs

**Page 29 of 29**

Jonathan Kline, P.A.,  Attorney at Law,  2761 Executive Park Drive,   Weston, Florida 33331  TEL: (954) 659-1919   FAX:  (954) 659-9937

29 of 55

# EXHIBIT "1"

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A PURCHASER OR LESSEE.

ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER OR ESCROW AGENT PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER AND ESCROW AGENT IS AUTHORIZED TO RELEASE SAME UPON DEVELOPER'S REQUEST.

CONTRACT FOR PURCHASE AND SALE

AVENUE, A CONDOMINIUM

Seller/Developer: IMICO BRICKELL, LLC, A DELAWARE LIMITED LIABILITY COMPANY

Purchaser: Adriana Paramo ~~and or assign~~

Social Security #:

Contract Date: November 19, 2004

Mailing Address: 4494 Fox Tail Lane Weston, FL, 33331 USA

| | |
|---|---|
| Home Telephone #:954-588-2884 | Work Telephone #: |
| Fax Number #: | E-mail: |
| Condominium Unit Number: 1215 | Closing Date: **upon completion** or subject to Paragraph 28. |

In consideration of the purchase price specified below, the mutual covenants and benefits provided for herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, the parties hereto do hereby agree as follows:

1.   GENERAL. Seller agrees to sell, and Purchaser agrees to purchase, in accordance with the terms and conditions of this Contract for Purchase and Sale ("Contract"), the Unit referenced above ("Unit") of AVENUE, A CONDOMINIUM ("Condominium"). The Condominium is or shall be created pursuant to the Declaration of Condominium for AVENUE, A CONDOMINIUM ("Declaration"), which is or shall be recorded in the public records of Miami-Dade County, Florida. The Unit, together with its percentage of undivided interest in the Common Elements of the Condominium, is more particularly described in the Declaration. The Unit shall be purchased for the purchase price and under the terms and conditions set forth below and elsewhere in this Contract.

| | |
|---|---|
| Unit Price:................................................................................ | $ 206,000.00 |
| Deposit Made This Date:......................................................... | $ 15,000.00 |
| Additional Deposit Due on: Upon execution of contract_____. | $ 5,600.00 |
| Additional Deposit Due on: Commencement of Construction but not to | |
|   exceed 180 days from signing of contract. | $ 20,600.00 |
| Additional Deposit Due on: _____ | $ N/A |
| Balance Due at Closing............................................................ | $ 164,800.00 |
| Additional Monies Needed: _____ ...... | $ N/A |

Capital Contribution to Condominium Association equaling twice the monthly maintenance

2.   PURCHASE PRICE. The total purchase price of the Unit shall be as set forth in Paragraph 1 above, and shall be paid as follows:
All deposits made by Purchaser under Paragraph 1 ("Earnest Money") shall be consideration for Seller reserving the Unit for Purchaser. Notwithstanding anything to the contrary herein, none of the monies received by Seller for upgrades to the Unit, if any, shall be deemed Earnest Money within the meaning of this Paragraph 2 of the Contract. **The Earnest Money shall be deposited in the Escrow Account of Royal Title & Escrow Company ("Escrow Agent")** pursuant to Section 718.202, Florida Statutes and an Escrow Agreement between Seller and Escrow Agent. Such Escrow Account shall be designated for the deposit of earnest monies received by Seller with respect to units within AVENUE, A CONDOMINIUM, and shall not be commingled with any other funds of Seller. The mailing address of the Escrow Agent is 555 NE 15th Street, Suite 100, Miami, FL 33132. All notices and claims of Purchaser with respect to the aforesaid escrow deposits shall be sent to the Escrow Agent at its address set forth above. Escrow Agent shall give Purchaser a receipt for his deposit upon his request. If Purchaser terminates this Contract without defaulting and as herein permitted, Seller shall refund all deposits. If Purchaser defaults, Seller shall be entitled to retain all deposits. Purchaser will be required to authorize disbursement of escrowed funds by the Escrow Agent to Seller at closing. Prior to disbursing Earnest Money in the event of a default hereunder, Escrow Agent shall give all parties fifteen (15) days notice, stating to whom the disbursement will be made. Any party may object in writing to the disbursement, provided the objection is received by Escrow Agent prior to the end of the fifteen (15) day notice period. All objections not raised in a timely manner shall be waived. In the event a timely objection is made, Escrow Agent shall consider the objection and shall do any or a combination of the following: (i) hold the Earnest Money for a reasonable period of time to give the parties an opportunity to resolve the dispute; (ii) disburse the Earnest Money and so notify all parties; and/or (iii) interplead the Earnest Money into a court of competent jurisdiction. Escrow Agent shall be reimbursed for its costs and expenses, including reasonable attorneys' fees. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs and expenses reimbursed to Escrow Agent. No party shall seek damages from Escrow.

Seller _____        Purchaser _____

Agent (nor shall Escrow Agent be liable for the same) for any matter arising out of or related to the performance of Escrow Agent's duties under this Earnest Money paragraph.

(b)   Deposits may be made by personal check (subject to clearance).   The balance due at closing must be paid by wire transfer of federal funds only.   All payments must be made in United States funds and all checks must be payable on a bank located in the Continental United States.   If Buyer fails to pay any deposit on time, and Seller agrees to accept it on a later date (which Seller is not obligated to do), Buyer will pay a late funding charge equal to interest on such deposit at the then applicable highest lawful rate from the date due until the date received and cleared by Seller).

(c)   **How Buyer Pays.**   Buyer understands and agrees that Buyer will be obligated to pay "all cash" at closing.   This Agreement and Buyer's obligations under this Agreement to purchase the Unit will not depend on whether or not Buyer qualifies for or obtains a mortgage from any lender.   Buyer will be solely responsible for making Buyer's own financial arrangements.   Seller agrees, however, to cooperate with any lender Buyer chooses and to coordinate closing with such lender, if, but only if, such lender meets Seller's closing schedules and pays Seller the proceeds of its mortgage at closing.

(d)   Except where expressly provided herein to the contrary or otherwise required by law, all interest earned on Buyer's deposits shall accrue solely to the benefit of Seller, and shall not be credited against the purchase price of the Unit.   Buyer further understands and agrees that to the extent that deposit monies are used for construction purposes, said monies are not available for investment and accordingly do not earn interest.   No interest will be assumed to be earned, unless in fact said sums are invested in an interest bearing account and do not in fact earn interest.

(e)   The balance of the purchase price and all other amounts due including but not limited to fees and costs shall be paid by certified check at the time of Closing.

3.   **DISPOSITION OF DEPOSITS.**   If construction, furnishing and landscaping of the Condominium are not substantially complete on the date of this Contract, deposit monies specified in Paragraph 2 hereof up to ten (10%) percent of the purchase price shall be retained in an escrow account by escrow agent and shall not be commingled with other funds of Seller.      Any monies deposited in excess of ten (10%) percent of the purchase price from Purchaser pursuant to the terms of this Contract may be used for construction purpose by Seller.

4.   **PRORATIONS.**

(a)   Ad Valorem Taxes.

(i)      Purchaser acknowledges that, as of the year in which Closing takes place, the Unit may not have been a separately described and assessed unit of real estate and that, in that event, ad valorem taxes for the Unit for the year in which Closing takes place may be assessed under a tax bill in the name of Seller which covers additional Unit,   Should the Unit not be separately described and assessed parcel of real estate, Purchaser agrees to pay Seller at Closing that portion of the tax for the year in which Closing takes place (based on the prior year if the tax bill for the year in which Closing takes place is not yet available) which shall be determined by multiplying the total tax bill by the percent interest in the Common Elements assigned to the Unit in the Declaration and then prorating the product of such multiplication as of the date of Closing.   Seller agrees to pay the entire tax bill before it becomes delinquent and, upon written request from Purchaser or any first mortgagee of the Unit, to provide Purchaser or such mortgagee proof of payment. If the amount allocated to the parties is based upon an estimate and the actual bill varies from the estimate, the party who paid too much shall have the right to adjust the prorated amount and within ten (10) days of receipt of notice the party who paid too little shall pay any increased amount based on the actual tax bill to the other party.

(ii)      If, in the year in which Closing takes place, the Unit is a separately described and assessed unit of real estate, then ad valorem taxes applicable to the Unit shall be prorated between the Seller and Purchaser as of the date of Closing. If the amount allocated to Purchaser is based upon an estimate and the actual bill varies from the estimate, the party who paid too much shall have the right to adjust the prorated amount and within ten (10) days of receipt of notice, the party who paid too little shall pay any increased amount based on the actual tax bill to the other party.

(b)   **Assessments.**   Purchaser shall pay his or her pro rata share of the common expense assessment levied against the Unit, as provided in the Declaration, for the year in which the Closing shall take place, which common expense assessment shall be adjusted at Closing according to the number of days remaining in the calendar year.   Except for that portion of the assessment installment as shall be payable for the month in which the Closing shall take place, which shall be prorated between Seller and Purchaser as of the day, of Closing, such adjusted common expense assessment shall be payable to Avenue Condominium Association, Inc. ("Association"), by Purchaser in equal monthly installments, commencing on the first day of the calendar month immediately following the date of Closing, or as otherwise provided by the Board of Directors of the Association.   From and after the first day of the first calendar month of the year following the year in which the Closing takes place, Purchaser shall pay all amounts as are assessed against the Unit in accordance with the terms and provisions of the Declaration.

(c)   **Contribution to Capital of Association.**   In addition to all other sums due hereunder, Purchaser agrees at Closing to make a non-refundable contribution to the capital of the Association in an amount equal to two (2) months general assessments on the Unit, at the time of closing.

(d)   **Adjustments with the Associations.**   Buyer understands that Developer may advance money to the Associations to permit them to pay for certain of their expenses (for example, but without limitation, insurance premiums, common element utility and/or cable or other interactive communication charges and deposits, permit and license fees, charges for service contracts, salaries of employees of the Association and other similar expenses). Seller is entitled to be reimbursed by the Association for its allocated portion of   these sums advanced.   Upon turnover by Developer, the Association will reimburse Seller out of initial contributions and regular assessments paid

Seller _____         Purchaser _____

by Buyer and other owners as those contributions and assessments are collected, or as otherwise requested by Seller. Seller also, at its election, may receive reimbursement for these payments by way of a credit against any sums it may become obligated to pay to the Association. No initial contributions of purchasers to the Condominium Association may be used for such purposes, however, as long as any guaranty by Seller of such Association's assessments is in effect.

5.   TITLE.

(b)   Title to the Unit shall be conveyed to Purchaser by special warranty deed, and title to the Unit shall be insurable or marketable and free and clear of all encumbrances, except as provided in subparagraph (b) below.

(c)   At least five (5) days prior to Closing, Seller will furnish to Purchaser a commitment for an ALTA Form B Owner's Title Insurance Policy issued by a title insurance company authorized to do business in the State of Florida. It is understood and agreed that Purchaser is purchasing the above referenced Condominium Unit, subject to the items as hereinafter stated, and that title to the Unit which the Purchaser shall acquire pursuant to this Contract shall be good, marketable and/or insurable, subject only to the following:

(i)   Conditions, restrictions, limitations, reservations, dedications, easements, licenses, existing zoning ordinances and other rights of governmental bodies and instruments of record, including, but not limited to, water, sewer, gas, electric and other utility agreements of record.

(ii)   Facts which an accurate survey or personal inspection of the Unit would disclose.

(iii)   Taxes for the current year and subsequent years.

(iv)   Covenants, conditions, restrictions, terms and other provisions as set forth in the Declaration of Condominium for AVENUE, A CONDOMINIUM, and its exhibits and Bylaws and Articles of Incorporation of the Avenue Condominium Association, Inc.

(v)   Any purchase money mortgage executed by Purchaser in connection with the Closing of this transaction.

(vi)   All standard policy exceptions and provisions as may be contained in the A.L.T.A. owner's policy of title insurance and standard exceptions for waterfront property.

(ix)   Any other items as disclosed in the prospectus.

(d)   RESPA Disclosure. As required by the Real Estate Settlement Procedures Act of 1974, Purchaser acknowledges that Seller has not directly or indirectly required Purchaser, as a condition of sale, to purchase either a fee owner's or mortgagee's title insurance policy from any particular title company. Purchaser may elect to obtain such insurance from a company of Purchaser's choice and Purchaser shall pay, at Closing, the title insurance premium for such policy, if Purchaser notifies Seller within fifteen (15) days of the date of this contract. If Purchaser makes said election, then Seller shall credit to Purchaser an amount equal to the promulgated rate for said insurance, less any discounts for reissue credits available to Seller.

6.   CLOSING

(b)   TIME OF CLOSING. This transaction shall close subsequent to Seller's obtaining the temporary Certificate of Occupancy from the proper Governmental agency responsible for issuing said Certificate on the floor in the building in which the Unit is situated. Seller shall give fifteen (15) days written notice of the closing date to Purchaser at Purchaser's address as same appears on the signature page hereof. Issuance of said Certificate for the Condominium shall constitute conclusive evidence of substantial completion of the Unit, as provided in this Contract. The fact that there may be minor items to be corrected or completed shall not delay nor postpone the Closing nor require the holding of any portion of the purchase price in escrow until the completion thereof. In the event the closing is delayed for any reason (except for delay desired, requested or caused by Seller), and Seller elects, at Seller's sole discretion, to reschedule the closing, Purchaser agrees to pay at closing a late funding charge equal to interest, at the then highest applicable lawful rate, on the portion of the purchase price that would have been paid to Seller or to Seller's order (including any mortgage payoffs) if the transaction contemplated herein had been timely consummated as originally scheduled by Seller, from the date Seller originally scheduled closing to the date of actual closing or, at Seller's option, Seller may impose a late charge equal to Fifty and No/100 ($50.00) Dollars to cover administrative and other expenses for each day Seller agrees to postpone the closing. All pro-rations will be made as of the originally scheduled date. Purchaser understands that Seller is not required to reschedule or to permit a delay in closing.

(c)   PLACE OF CLOSING. The Closing of this transaction shall be held at the offices of Seller's attorney, Seller's office, Seller's title agent, or such place designated by Seller.

7.   ADDITIONAL COSTS. A "development fee" equal to one and three quarters percent (1.75%) of the Purchase Price (and of any charges for options or extras now or hereafter contracted for which are not included in the Purchase Price). This fee will be used, in part, to pay for the costs of officially recording the deed conveying the Unit to Purchaser in the Public Records of Miami-Dade County (presently, recording fees are $10.00 for the first page of an instrument and $8.50 for each additional page), and the documentary stamp taxes payable in connection with the deed conveying the Unit to the "development fee" shall be retained by Seller (presently, documentary stamp taxes are $1.05 total for each $100.00 of consideration). The balance of expenses, including without limitation, certain of Seller's administration expenses and Seller's attorneys' fees in connection with the development of the Condominium. Accordingly, Purchaser understands and agrees that the

Seller _____   Purchaser _____

development fee is not for payment of closing costs or settlement services (other than to the extent expressly provided above), but rather represents additional funds to Seller which are principally intended to provide additional revenue and to cover various out –of-pocket and internal costs and expenses of Seller associated with development of the Condominium. In the event of increases either in the recording fees imposed by the County, the documentary stamp tax rates or the minimum risk title insurance premiums, subsequent to the date of this Agreement, or in the event of the imposition of any surcharge or any new governmental tax or charge on deeds or conveyances, Purchaser agrees to pay all such increases, surcharges or new taxes of charges, in addition to the development fee;

In the event Purchaser obtains a loan for any portion of the Purchase Price, Purchaser will be obligated to pay any loan fees, closing costs, escrows, appraisals, credit fees, lender's title insurance premiums, prepayments and all other expenses charged by closing agent, escrow agent, title company or any lender giving Purchaser a mortgage, if applicable. Additionally, if Purchaser obtains a loan and elects to have Seller's Closing Agent act as "Loan Closing Agent" as well, Purchaser agrees to pay, in addition to any other sums described in this Agreement, to Seller's Closing Agent the aggregate sum of $775.00 for the closing agent's title examination, title search and closing fee related to acting as "Lender's Closing Agent." Notwithstanding any of the references in this paragraph to Purchaser obtaining a loan, nothing herein shall be deemed to make the Agreement, or the Purchaser's obligations under the Agreement, conditional or contingent in any manner on the Purchaser obtaining a loan to finance any portion of the Purchase Price, it being the agreement of the Purchaser that the Purchaser shall be obligated to close "all cash.

In addition, Purchaser shall reimburse Seller for any utility, cable or interactive communication deposits or hook-up fees which Seller may have advanced prior to closing for the Unit. Purchaser agrees to reimburse Seller and/or Seller's closing agents, for charges incurred in connection with coordinating closing with Buyer and/or Buyer's lender, including, without limitation, charges for messenger expenses, long distance telephone calls, photocopying expenses, telecopying charges and others.

8.     DEFAULT.

(d)  Purchaser's Default. Purchaser shall be in default under this Contract in the event that (1) Purchaser fails or refuses to complete and execute all of the instruments required of Purchaser under this Contract promptly or when requested to do so by Seller or lender, if applicable; or (2) Purchaser fails to or refuses to make timely payment of any payments required under this Contract; or (3) Purchaser in any other manner fails to or refuses to perform his obligations under this Contract.  In the event of any such default by Purchaser, Seller shall give Purchaser written notice of such default and allow twenty (20) days from the date of such notice for Purchaser to cure such default. If Purchaser shall fail to cure such default within such twenty (20) day period, the Seller shall, and does hereby have, the unrestricted option to: (1) consider the Purchaser in default under this Contract; (2) retain all sums paid to it hereunder as agreed upon and liquidated damages (not as a penalty) and in full settlement of any claim for damages; and, (3) terminate all rights of Purchaser under this Contract and, thereupon, the parties hereto will be released and relieved from all obligations hereunder.  The provisions herein contained for liquidated and agreed upon damages are bona fide provisions for such and are not a penalty, the parties understanding that by reason of the withdrawal of the Unit from sale to the general public at a time when other parties would be interested in purchasing the Unit, that Seller will have sustained damages if Purchaser defaults, which damages will be substantial but will not be capable of determination with mathematical precision and, therefore, as aforesaid, the provisions for liquidated and agreed upon damages have been incorporated into this Contract as provisions beneficial to both parties hereto. Purchaser and Seller recognize the impossibility of measuring Seller's damages if Purchaser defaults.  In the event any litigation or arbitration is commenced as a result of this Contract and Seller prevails in such litigation or arbitration, the Purchaser shall also be liable for Seller's attorneys' fees and costs resulting therefrom.

The Seller will give the purchaser written notification of purchaser's default or breach of contract and the opportunity to have at least 20 days from the receipt of notice to correct the default or breach. If the purchaser loses rights and interest in the unit because of the purchaser's default or breach of contract after 15% of the purchase price, exclusive of interest, has been paid ,the seller shall refund to the purchaser any amount which remains from the payments ,made after subtracting 15% of the purchase price, exclusive of interest, or amount of the seller's actual damages, whichever is the greater.

(e)  Seller's Default. If Seller defaults in the performance of this Contract, Purchaser shall give Seller written notice of such default, and if Seller, within twenty (20) days from receipt of such notice shall fail to take action that would cure the default within a reasonable period of time, and if Purchaser has performed all of his obligations hereunder, then Purchaser shall be entitled all remedies under the law, except consequential damages or special damages.

9.     WARRANTY.

Seller has not made, and hereby expressly disclaims, any and all implied warranties regarding the unit and the condominium property as to its material, workmanship or capacity, including implied warranties of merchantability, habitability or suitability and quality or fitness for a particular purpose, other than those which cannot be disclaimed. No warranties or guaranties are given as to consumer products as defined in 15 U.S.C., Section 2301 et seq. (Magnuson-Moss Warranty Act). Seller has not given and Purchaser has not relied on or bargained for any such warranties. This disclaimer excludes the implied warranty provided by Section 718.203, Florida Statues, to the extent permitted by law. Furthermore, in no event will Seller be liable to Purchaser for any consequential damages including, but not limited to, inability to possess the Unit, inconvenience, or loss of time, due to any of the aforementioned defects.

10.   NON-ASSIGNABILITY. This Contract and Purchaser's interest and rights hereunder are personal to Purchaser and neither said Contract nor the interest or rights of Purchaser hereunder, or any portion thereof, shall be assigned or transferred directly or indirectly, in whole or in part, without prior written approval of Seller. Any such assignment without such written approval of Seller shall be invalid and shall not be binding upon Seller and shall not relieve Purchaser of Purchaser's obligations under this Contract. This Contract shall be binding upon and inure to the

Seller _____     Purchaser _____

benefit of the heirs, executors, administrators and permitted assigns of the parties to this Contract; provided, however, this Contract shall not become binding upon Seller until approved pursuant to the terms hereof.

11. NOTICES. The delivery of any items and the giving of notice in compliance with this Contract shall be accomplished by delivery of the item or notice to the party intended to receive it or by facsimile, or by mailing by certified or registered mail, U.P.S., Federal Express, or Airborne Express addressed to the address of the party herein stated. Notice or delivery by mail shall be effective when mailed. Notice or delivery by permitted overnight courier shall be effective the day deposited with such courier.

12. Litigation  In the event of any litigation between the parties under this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and court costs at all trial and appellate levels. This paragraph shall survive (continue to be effective after) any termination of this Agreement, but shall otherwise be deemed merged into the deed at Closing.

13. FINANCING.  Purchaser is obligated to pay "all cash" at closing. This Contract and Purchaser's obligations under this Contract shall not depend on qualifying or obtaining a mortgage from any lender or any conditions imposed by such lender. Seller will, however, cooperate with any lender and coordinate closing with it, if, but only if, the lender meets Seller's closing schedule. Although Seller does not have to do so, if Seller agrees to delay closing until Buyer's lender is ready, or to wait for funding from Buyer's lender until after closing, or to accept a portion of the sums due at closing in the form of a personal check, Buyer agrees to pay Seller a late funding charge equal to interest, at the then highest applicable lawful rate on all funds due Seller which have not then been paid to Seller (and, with regard to personal checks, which have not than cleared) from the date Seller originally scheduled closing to the date of actual payment (and, with regard to personal checks, to the date of final clearance). This late funding charge may be estimated and charged by Seller at closing. Seller's estimate will adjusted after closing based on actual funding and clearance dates upon either Seller's or Buyer's written request. Without limiting the generality of paragraph 30 of this Agreement, the foregoing sentence will survive (continue to be effective after) closing.

**Credit Check.**  Purchaser hereby authorizes IMICO BRICKELL, LLC. or affiliated entities, to inquire into Purchaser's EQUIFAX, EXPERIOAN or TRANSUNION credit reports. Purchaser agrees to pay all costs relating to the credit report, which shall be in addition to the purchase price.

14.    DESCRIPTION OF UNITS AND FIXTURES.

(b)  Floor Plan: The floor plan of the Unit shall be substantially similar to the corresponding model for that type of Unit, as situated in the actual building with some Units constructed as shown and others on a "reverse floor plan" to accommodate the basic floor plan to the building's configuration.

(c)  Personal Property and other Items and Materials.  Purchaser understands and agrees that certain items, which may have been seen in illustrations, are not necessarily included with the sale of the Unit, but rather are displayed to provide purchaser with ideas for furnishing and decorating the Unit, for example wall coverings (including paint other than base primer), accent light fixtures, wall ornaments, drapes, blinds, furniture, knickknacks and other decorator accessories, lamps, mirrors, graphics, pictures, plants, wall-hung shelves, wet bars, intercoms, kitchen accessories, linens, window shades, security systems, certain built-in fixtures, carpets or other floor coverings and colors, wood trim, other upgraded items, balcony treatments (e.g., tile, brick Chattahoochee, scored concrete or wood trim), barbecues, planters, window screens, landscaping and any other items of this nature which may be added or deleted by Seller from time to time. This list of items (which is not all-inclusive) is provided as an illustration of the type of items built-in or placed upon the models (if any) or shown in illustrations strictly for the purpose of decoration or example only. Purchaser understands and agrees that only those items of personal property which are specifically provided for in a Rider or Schedule to this Agreement signed by both Purchaser and Seller are to be included with the Unit.

Purchaser further understands and agrees that certain items if included with the Unit, i.e. range, dishwasher, central A/C – heater, tile, cabinets, wood, stain, grout, wall and ceiling textures (including paint other than base primer), cultured marble, mica and carpeting, are subject to size and color variations, grain and quality variations, and may vary in accordance with price, availability and changes by manufacturer from those shown in illustrations or included in Seller's Plans and Specifications or in the published list of standard items (if any).  If circumstances arise which, in Seller's opinion, warrant changes of suppliers, manufacturers, brand names or items, Seller may substitute equipment, material, appliances, etc., with items which in Seller's opinion are of equal or better quality (regardless of cost). Purchaser also understands and acknowledges that Seller has the right to substitute or change materials and/or stain colors utilized in wood décor (if any).  Purchaser recognizes that certain colors as shown in displays or in the models, including, but not limited to, carpeting and wood stain, will weather and fade and may not be duplicated precisely.

If Seller allows Purchaser to select certain colors and/or materials in the Unit (which Seller is not obligated to do), Purchaser understands and agrees that Purchaser must submit his selections to Seller in writing within fourteen (14) days after the date the list of selections (if any) is made available to Purchaser.  If these selections (if any) are not delivered to Seller in writing within the time period stated above, then it is agreed and understood that the choices will be made by Seller in Seller's sole discretion.

The agreements and waivers of Purchaser contained in this paragraph will survive (continue to be effective after) closing.

(d)  Substitutions and Modifications: Recognizing that the availability of particular materials or designs may be affected by manufacturing and/or marketing conditions or interpretations of local, state or federal codes, regulations or requirements, Purchaser agrees that Seller shall at all times, without the prior approval of Purchaser, have the right to substitute materials or appliances of Like or better quality, utility or color for those contained in the specifications and/or models and to make necessary alterations in the installation of such items as long as such substitution or alteration does not materially affect the rights of purchaser or the value of the Unit. By accepting possession of the dwelling Unit, Purchaser shall be deemed to have accepted any such substitutions or modifications for the dwelling Unit purchased.

Seller _____            Purchaser _____

15.   CONSTRUCTION BY SELLER. Purchaser fully understands and is aware that Seller anticipates that the buildings will be completed within the estimated completion dates set forth in this Contract, but cannot provide a fixed date for occupancy, by reason of factors influencing the rate of completion such as, but not Limited to, Acts of God, strikes, war, availability of material, order of a court of competent Jurisdiction and the Like. Accordingly, this transaction shall be closed at such time as a Temporary Certificate of Occupancy has been issued, upon notification of Purchaser by Seller, at a time, date and place as specified in such notice, which date shall be not less than fifteen (15) days from the date of such notice.

16.   CONSTRUCTION STATUS.   Purchaser acknowledges that there may be ongoing construction after Closing. Notwithstanding, in accordance with Section 718.104(4)(e), Florida Statutes, Purchaser acknowledges that Seller will not be obligated to give any reduction in the purchase price, or reimburse any expense, or place any funds in escrow due to ongoing construction at the time of Closing.

17.   SURVIVAL OF CONTRACT.   All conditions or stipulations not fulfilled at time of Closing shall survive the Closing until such time as the conditions or stipulations are fulfilled

18.   POSSESSION. Possession of the Unit shall be delivered to Purchaser at the Closing.

19.   AVENUE CONDOMINIUM ASSOCIATION, INC.

(a)   Governing Documents. Purchaser acknowledges that the Unit being purchased is a portion of the real property and improvements which have been or will be made subject to the Declaration referred to in Paragraph 1. The nature and extent of the rights and obligations of the Purchaser in acquiring and owning the Unit will be controlled by and subject to the Declaration, as well as the Articles of Incorporation, the Bylaws, and the rules and regulations of the Association. Purchaser agrees to comply with all of the terms, conditions and obligations set forth therein.

(b)   Membership in Association. Upon conveyance of title to the Unit to Purchaser, Purchaser shall automatically become a member of the Association and shall be subject to the assessment obligations and other provisions set forth in the Declaration, including the obligation of the Purchaser to pay a contribution to the working capital of the Association referred to in Paragraph 3(c) of this Contract.

(c)   Amendments to Documents. Purchaser hereby acknowledges and agrees that prior to the Closing, Seller shall have the right to modify, change, revise and amend, without Purchaser's approval, any or all of the documents (other than this Contract), the drafts of which are contained in the Prospectus. In the event the Seller shall make any amendment, modification, change, or revision to the documents or materials contained in the Prospectus, then a copy of such shall be delivered to the Purchaser and, if such change, amendment, revision or modification materially alters or modifies the offering in a manner that is adverse to the Purchaser, then, the Purchaser shall have the option to (1) consent to such, or (2) within fifteen (15) days after receiving a copy of such, terminate this Contract in writing, in which event Purchaser's entire deposit shall be refunded and the parties hereto shall have no rights or liabilities hereunder. In the event Purchaser does not terminate this Contract within said fifteen (15) days, Purchaser shall be conclusively deemed to have consented to the proposed change, amendment, modification, or revision.

20.   BROKERAGE AND AGENCY. Except as set forth below, Purchaser and Seller represent and warrant to the other that each party has not dealt with a broker, agent, or finder in connection with this transaction and Purchaser and Seller covenant and agree, each to the other, to indemnify and hold each other harmless from any and all losses, damages, costs and expenses including, but not limited to, attorneys' fees and court costs that may be incurred or suffered as a result of any claim for any fee, commission, or similar compensation with respect to this transaction made by any person or entity, whether or not such claim for any fee, commission, or similar compensation with respect to this transaction made by any person or entity is meritorious. Seller's broker in this transaction is Fortune International Realty ("Seller's Broker"). Purchaser's broker in this transaction is Maria Betsy Tobar/Fortune ("Purchaser's Broker"). Seller's Broker and Purchaser's Broker shall sometimes be referred to herein together as "Broker". Purchaser and Seller acknowledge that they have not relied upon any advice, representations or statements of Broker and waive and shall not assert any claims against Broker involving the same.

21.   TIME OF ESSENCE. Time is of the essence of this Contract.

22.   FORCE MAJEURE. Either party hereto shall be excused for the period of any delay in the performance of any obligations hereunder when such delay is occasioned by cause or causes beyond the control of the party whose performance is so delayed and the time for performance shall be automatically extended for a like period. Such causes shall include, without limitation, all labor disputes, civil commotion, war, warlike operations, invasion, rebellion, hostilities, military or usurped power, sabotage, government regulations or controls, fire or other casualty, inability to obtain any necessary materials or services, or acts of God.

23.   SEVERABILITY. The provisions of this Contract are intended to be independent, and in the event any provision hereof should be declared by a court of competent jurisdiction to be invalid, illegal or unenforceable for any reason whatsoever, such illegality, unenforceability, or invalidity shall not affect the remainder of this Contract.

24.   CONSTRUCTION OF CONTRACT. This Contract concerns the sale of real property located in the State of Florida. This Contract and all of the relationships between the parties hereto, shall be construed and interpreted in accordance with the laws of the State of Florida. Notwithstanding the above, the Purchaser and Seller acknowledge that they have read, understand, and have had the opportunity to be advised by legal counsel as to each and every one of the terms, conditions, restrictions, and effect of all of the provisions of this Contract and every part of the Prospectus, all of which are incorporated herein by reference and made a part hereof, and the Purchaser agrees to the enforcement of any and all of these provisions. It is further agreed that words of any gender used in

Seller _____   Purchaser _____

this Contract shall be held to include any other gender, any words in the singular number shall be held to include the plural wherever applicable, and that captions and paragraph numbers appearing in this Contract are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such paragraph or in any way affect this Contract.

25. ENTIRE AGREEMENT. This Contract contains the entire agreement between the parties hereto. No agent, representative, salesman or officer of the parties hereto has authority to make, or has made, any statements, agreements, or representations, either oral or in writing, in connection herewith, modifying, adding to, or changing the terms and conditions hereof and neither party has relied upon any representation or warranty not set forth in this Contract. No dealings between the parties or customs shall be permitted to contradict, vary, add to, or modify the terms hereof. Purchaser acknowledges, warrants and represents that this Contract is being entered into by Purchaser without reliance upon any representations concerning any potential for future profit, any rental income potential, tax advantages, depreciation or investment potential, and without reliance upon any other monetary or financial advantage. Purchaser acknowledges that no such representations have been made by Seller or any of its agents, employees or representatives.

26. OFFER. This Contract, as executed by Purchaser, shall constitute an offer to Seller. Seller may accept the same, if at all, by delivering to Purchaser at least one executed copy of this Contract prior to the time that Purchaser shall notify Seller, in writing, of Purchaser's revocation of this offer. The date of this Contract is the date of acceptance by Seller.

27. DISCLOSURES REGARDING THE UNIT. Purchaser acknowledges and agrees that he/she has read and understood the disclosures pertaining to the purchase and sale of the Unit contemplated by this Contract and the Condominium as set forth in the Prospectus described as "Disclosures Regarding the Condominium", and incorporated herein by this reference.

28. PRE-SALE CONTINGENCY, COMPLETION DATE AND CLOSING DATE. Seller estimates it will substantially complete construction of the Unit, in the manner specified in this Agreement, by July 1, 2007, subject only to extensions resulting from "Force Majeure" or to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. Notwithstanding the foregoing and any other contrary provision of this Agreement, Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause Purchaser's deposits to be refunded in the event that Seller does not procuring qualified purchase contracts with a minimum aggregate gross sales price as required by any loan agreement Developer may have with its lender. Seller must, however, notify Purchaser of such a termination within one (1) year from the date of this agreement for such unit (the "Outside Date"), otherwise Seller will be required to construct the Unit and proceed to perform its obligations under this Agreement. This paragraph shall not delay the effectiveness of this Agreement, which shall be immediate, but, rather, shall be deemed a "condition subsequent" to this Agreement. In the event of Seller's termination of this Agreement pursuant to this paragraph, upon such termination and the return of Purchaser's deposits with any interest earned thereon, Seller and Purchaser will be fully relieved and released from all obligations and liabilities under and in connection with this Agreement. Purchaser agrees that notwithstanding any other provision of this contract the closing will be at a time in accordance with paragraph 6 of this Contract

29. Florida Law; Severability; Interstate Land Sales. Any disputes that develop under this Agreement will be settled according to Florida law. If any part of this Agreement violates a provision of applicable law, the applicable law will control. In such case, however, the rest of the Agreement (not in violation) will remain in force.

Without limiting the generality of the foregoing, it is Purchaser's and Seller's mutual desire and intention that all provisions of this Agreement be given full effect and be enforceable strictly in accordance with their terms. If, however, any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement, in its entirety, unenforceable, the unenforceable part or parts are to be judicially modified, if at all possible, to come as close as possible to the expressed intent of such part or parts (and still be enforceable without jeopardy to other parts of this Agreement, or this Agreement in its entirety), and then are to be enforced as so modified. If the unenforceable part or parts cannot be so modified, such part or parts will be unenforceable and considered null and void in order that the mutual paramount goal (that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms) can be achieved.

Without limiting the generality of the foregoing, if the mere inclusion in this Agreement of language granting to Seller certain rights and powers, or waiving or limiting any of Purchaser's rights or powers or Seller's obligations (which otherwise would be applicable in the absence of such language), results in a final conclusion (after giving effect to the above judicial modification, if possible) that Purchaser has the right to cancel this Agreement and receive a refund of his deposits, such offending rights, powers, limitations and/or waivers shall be struck, canceled, rendered unenforceable, ineffective and null and void. Under no circumstances shall either Purchaser or Seller have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement (other than language which is intended specifically to create such a cancellation right).

The following sentence will supersede and take precedence over anything else in this agreement which is in conflict with it: If any provisions serve to: (1) limit or qualify Seller's substantial completion obligations as stated in paragraph 28, or (2), limit Purchaser's remedies in the event that such obligations are breached, or (3) grant Seller an impermissible grace period, and such limitations or qualifications are not permitted if the exemption of this sale from the Interstate Land Sales Full Disclosure Act pursuant to 15 U.S.C.§1702(a)(2) is to apply or this Agreement is to otherwise be fully enforceable, then all those provisions are hereby stricken and made null and void as if never a part of this Agreement.

30. Return of Condominium Documents. If this Agreement is canceled for any reason, Purchaser will return to Seller all of the Condominium Documents delivered to him in the same condition received, reasonable wear and tear accepted. If Purchaser fails to return the Condominium Documents, Purchaser agrees to pay Seller $50.00 to defray the costs of preparation, printing and delivery of same.

Seller _____   Purchaser _____

31. SELLER'S FINANCING. Seller may borrow money from lenders for the acquisition, development and/or construction of the Condominium. Purchaser agrees that any lender advancing funds for Seller's use in connection with the Condominium will have a prior mortgage on the Unit and the Condominium until closing. At that time, Seller shall use all proceeds of Purchaser's purchase which are necessary to release the Unit from the then applicable mortgages for the purpose of obtaining those releases.  Neither this Agreement, nor Purchaser's payment of deposits, will give Purchaser any lien or claim against the Unit of the Condominium. Without limiting the generality of the foregoing, Purchaser's rights under this Agreement will be subordinate to all mortgages (and all modifications made to those mortgages) affecting the Unit or the Condominium even if those mortgages (or modifications) are made or recorded after the date of this Agreement.

32. OTHERS BOUND BY THIS AGREEMENT. If Purchaser dies or in any way loses legal control of his affairs, this Agreement will bind his heirs and personal representatives.  If Purchaser has received permission to assign or transfer Purchaser's interest in this Agreement, this Agreement will bind anyone receiving such interest. If Purchaser is a corporation or other business entity, this agreement will bind anyone receiving such interest.  If Purchaser is a corporation or other business entity, this Agreement will bind any successor corporation or entity. If more than one person signs this Agreement as buyer, each will be equally liable, on a joint and several basis, for full performance of all Purchaser's duties and obligations under it and Seller can enforce it against either as individuals or together.

33. INSPECTION PROCEDURE.

(a) Inspection of Seller's Construction and Development Plan. The Unit and other improvements which are to constitute the Condominium may not be complete at the time Purchaser executes this Contract. Accordingly, Purchaser may, during reasonable business hours and by appointment, inspect the complete plans and specifications for the construction of the building structure and other improvements which shall constitute the Condominium, and the Green Open Spaces, Road Ways, Parking Spaces, Recreation Parcels, and Entry Feature, if any, as more particularly described in the Prospectus. Said plans and specifications may be inspected at Seller's place of business at the address set forth in this Contract. Purchaser agrees that the preliminary Survey, Exhibit "A" to the Declaration which Purchaser received prior to the execution of this Contract was prepared from Plans.  Upon completion of the apartment building and improvements on the Condominium Property, said Exhibit "A" will be modified and changed, as required, to be "as built." Said Exhibit No. 1 shall then include the statutory Certificate required and it will be attached as Exhibit "A" to the Declaration of Condominium and duly recorded with same, together with the other Exhibits to said Declaration.

(b) Inspection of Unit.

(i)    Purchaser is required to conduct a personal inspection of the Unit with Seller's representative at a mutually convenient time during Seller's normal business hours no more than three (3) days prior to the scheduled closing date.

(ii)    If Purchaser is unable to conduct the personal inspection of the Unit with Seller, as required, Purchaser may designate a representative by written notice to Seller. Purchaser will be bound by the actions of the representative.

(iii)    During the personal inspection, Purchaser or Purchaser's representative and Seller will complete a list of inspection items in the Unit which require Seller's attention. Purchaser and Seller will sign the list as conclusive evidence of the agreed upon work to be performed. When the agreed work has been performed (which will be within a reasonable time considering the availability of materials and the nature of the work to be performed) that will be deemed conclusively that: (1) Seller's obligations have been fulfilled, and (2) any additional items will be the responsibility of the Purchaser.

(iv)    Any contractor of Purchaser will be allowed access to the Unit for construction work only subsequent to the later of: (1) completion of the personal inspection, (2) signing of the list of inspection items by Purchaser; and (3) closing.

(v)    It is agreed by the parties to this Contract that the fact that the parties have not completed the inspection, or that items listed on the inspection list have not been addressed by Seller, will not entitle Purchaser to delay closing or to withhold money due Seller at closing, and a refusal to close as scheduled or to pay the full purchase price at closing will constitute a default by the Purchaser. Seller's obligation to perform the work agreed upon in the list of inspection items will survive closing.

(vi)    Failure of the Purchaser to conduct the personal inspection and complete and sign the list of inspection items by the date established in Paragraph 30(a) of this Contract will be deemed to be: (1) conclusive of Purchaser's acceptance of the Unit in accordance with paragraph 13; and (2) a complete waiver of all objections to defects in workmanship or materials. This will not be deemed to be a waiver of all warranties provided to Purchaser by law.

(vii)    The provisions of this paragraph shall survive the closing.

34. PROSPECTUS. The condominium documents required by Section 718.504, Florida Statutes to be provided by Seller to Purchaser are defined as the Prospectus together with all exhibits to it. By signing the Receipt for Condominium Documents attached hereto, Purchaser acknowledges receipt of the Prospectus and all exhibits, as well as those disclosures as provided in the prospectus described as "Disclosures Regarding the Condominium" as well as those shown on exhibit "A" of this contract.

35. RADON GAS DISCLOSURE. The following disclosure is required by Section 404.056(8), Florida Statutes, for all Contracts for Sale and Purchase of any building in Florida: "Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are

Seller _____   Purchaser _____

exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit."

36. INSULATION; ENERGY EFFECIENCY. Seller has advised Buyer, as required by the rules of the Federal Trade Commission, that it intends, currently, to install in connection with the Unit, the following insulation:

| | Type | Thickness | R-Value |
|---|---|---|---|
| Exterior Walls | Foil | ¾ inches | R-4.2 |
| Roof | Blown | 9 inches | R-30 |
| Boundary walls | | | |
| Between units | Foil | ¾ inches | R-4.2 |

Seller has the right to substitute insulation so long as the R-value is equal to or greater than that set forth above. Purchaser understands that the aforementioned R-values are supplied by the manufacturer, and Seller will have no liability if the R-value is, in fact, different than that indicated.

To the extent required by applicable law, Purchaser may have the Condominium building's energy efficiency rating determined. Purchaser acknowledges receipt of the Department of Community Affairs' brochure regarding energy efficiency ratings.

All insulation and energy efficiency rating information is subject to Seller's general right to make changes in Seller's Plans and Specifications and to applicable limitations of Seller's liability to Purchaser.

37. DAMAGE BEFORE CLOSING. If Unit is damaged by fire or other casualty after this Contract takes effect but before Closing, Seller shall be responsible for the loss. But if damage occurs after the Closing on the first Unit in the condominium, Purchaser or Condominium Association must make repair the Unit.

38. SPECIAL STIPULATIONS. The following stipulations, if in conflict with any preceding provision, shall control.

(a) Exhibits and Addenda. The Exhibits and/or Addenda that are attached hereto are by this reference made a part hereof.

(b) Statement by Salesperson. Seller and Seller's officers/employees are not responsible for, or bound by, any statement, representation and/or Contract by a salesperson or other agents unless such statement, representation and/or Contract is in writing and signed by one of Seller's authorized officers. PLEASE ACKNOWLEDGE THAT IN MAKING THIS PURCHASE PURCHASER IS NOT RELYING UPON ANY STATEMENT, REPRESENTATION OR CONTRACT MADE BY A SALESPERSON OR AGENT (EXCEPT AS MAY BE IN WRITING AND SIGNED BY ONE OF SELLER'S AUTHORIZED OFFICERS) BY PLACING PURCHASER'S INITIALS ON THIS PAGE.

(e) Seller's Reserved Right to Marketing Strategy. Seller reserves the right to implement any legal marketing program as deemed necessary to market Units within this project. This includes, but is not limited to, the use of model Units, signs, flags, banners, special on-site events, media advertising, modifications of model and production Units, etc. Seller also reserves the right to price Units at the current market value in an effort to sell Units. There are other marketing strategies and incentive plans not noted herein which Seller reserves the right to implement or discontinue. Purchaser hereby acknowledges Seller's rights as stated above.

(f) Private Street. The streets, alleys and driveways located within the overall development are private streets, alleys and driveways and will be maintained by the Association.

(g) Estimated Budget. The Condominium Association budget provided to Purchaser is based on estimated expenses only and may increase or decrease significantly when the actual expenses of the Condominium Association become known.

(i) Model Unit/Sales Office. For the purposes of completing the sales promotion of the Condominium and until the sale of all Units in the Condominium, the Seller, its successors and assigns, is hereby given the full right and authority to maintain or establish on the Condominium Unit and Common Elements such models, sales offices, banners, trailer, balloons and advertising signs, if any, as Seller may deem necessary in its sole discretion, together with the right of ingress and egress to the Common Elements in connection therewith.

(j) Recording. Purchaser shall not record the Contract in the public records of Miami-Dade County, Florida. The recording by Purchaser of the Contract shall constitute a default by Purchaser.

(k) Captions and Headings. Captions and paragraph headings contained in the Contract are for convenience and references only and in no way define, describe, extend or limit the scope or interest of the Contract nor the interest of any provision hereof.

(l) Clerical Errors. The Purchaser(s) agree(s), if requested by the Seller, to fully cooperate in correcting any clerical errors as may appear in the Contract.

(m) Counterparts and Facsimile. This Agreement may be executed in one or more counterparts and by facsimile, each of which shall be deemed an original, and said counterparts shall constitute the same instrument.

Seller _____

Purchaser _____

39. Miami-Dade County Ordinance 93-21. Pursuant to the mandates of Miami-Dade County Ordinance 93-21 and the provisions of Chapter 11C of the Metropolitan Miami-Dade County Code, Purchaser is hereby advised, and acknowledges and agrees, that the Unit is located in (i) a coastal high hazard area, and (ii) a special flood hazard area. If the Unit is below the applicable flood elevation level and is substantially damaged or substantially improved, as defined in Chapter 11C of the Metropolitan Miami-Dade County Code, it may, among other things, be required to be raised to the applicable flood elevation level.

40.    ADDITIONAL DISCLOSURES.

Property Tax Disclosure.    BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE.   A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

Chapter 558, Florida Statutes.   CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR UNIT OR CONDOMINIUM. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT, A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE.  THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

Construction Industries Recovery Fund.   PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRIES RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIC VIOLATIONS OF FLORIDA LAW BY A STATE-LICENSED CONTRACTOR.  FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:  (850) 487-1395; CONSTRUCTION INDUSTRY LICENSING BOARD, 1940 N. MONROE STREET, TALLAHASSEE FL 32399.

41.    THIS CONTRACT IS VOIDABLE BY PURCHASER BY DELIVERING WRITTEN NOTICE OF THE PURCHASER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS CONTRACT BY THE PURCHASER, AND RECEIPT BY PURCHASER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM BY THE SELLER UNDER SECTION 718.503, FLORIDA STATUTES. THIS CONTRACT IS ALSO VOIDABLE BY PURCHASER BY DELIVERING WRITTEN NOTICE OF THE PURCHASER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF RECEIPT FROM THE SELLER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE PURCHASER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. THE PURCHASER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER THE PURCHASER HAS RECEIVED ALL OF THE ITEMS REQUIRED. PURCHASER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

42.    ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

43. YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER UNTIL MIDNIGHT OF THE FIFTEENTH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT.

NOTE: Before Purchaser signs this Agreement, Purchaser should read it and the Condominium Documents carefully.  Buyer is advised that this Agreement contains references to certain closing costs (paragraph 7), information regarding selling agents, strict limitations on Purchaser's rights upon Seller's default (paragraph 8), disclaimers of warranty liability (paragraph 9), and right of seller to make changes in the offer made to Purchaser (paragraphs 15, 16, 20).  Purchaser is further advised that the Condominium Documents contain other important information, including, but not limited to, information regarding the schedule and other details for the turnover of control of the condominium association to unit owners other than the developer and the right to cancel certain contracts affecting the condominium association before control is transferred to unit owners other than the developer. Seek professional advice.

If Purchaser voids this Contract in accordance with this provision, Purchaser shall receive a full refund of all Earnest Money collected and held by Escrow Agent, only after Escrow Agent verifies that such Earnest Money has been deposited into Escrow Agent's escrow account, and that the sums that have been deposited have cleared the Escrow Agent' banking institution.  Escrow Agent may demand proof of clearance in the form of a cancelled check or other proof acceptable to Escrow Agent

Receipt of deposit in the sum of $ _20,600.00_ is hereby acknowledged

by:  _Karling Obando_

This Contract is subject to a manager's approval and supersedes any previous contract. The authorized representatives on behalf of IMICO BRICKELL, LLC, are _____

Seller _____

Purchaser _____

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A PURCHASER OR LESSEE.

YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER UNTIL MIDNIGHT OF THE FIFTEENTH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT.

IF YOU DID NOT RECEIVE A PROPERTY REPORT PREPARED PURSUANT TO THE RULES AND REGULATIONS OF THE OFFICE OF INTERSTATE LAND SALES REGISTRATION, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, IN ADVANCE OF YOUR SIGNING THE CONTRACT OR AGREEMENT, THE CONTRACT OR AGREEMENT OF SALE MAY BE CANCELLED AT YOUR OPTION FOR TWO YEARS FROM THE DATE OF SIGNING.

ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER OR ESCROW AGENT PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER AND ESCROW AGENT IS AUTHORIZED TO RELEASE SAME UPON DEVELOPER'S REQUEST.

SELLER:   IMICO   BRICKELL,   LLC,   A DELAWARE LIMITED LIABILITY COMPANY

X_____
.PURCHASER

BY:_____
Authorized Representative

X_____
.PURCHASER

Date:_____

Date: 2/25/05

Seller _____

Purchaser _____

# EXHIBIT "2"

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A PURCHASER OR LESSEE.

ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER OR ESCROW AGENT PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER AND ESCROW AGENT IS AUTHORIZED TO RELEASE SAME UPON DEVELOPER'S REQUEST.

## CONTRACT FOR PURCHASE AND SALE

### AVENUE, A CONDOMINIUM

Seller/Developer: IMICO BRICKELL, LLC, A DELAWARE LIMITED LIABILITY COMPANY

Purchaser: ABRAHAM CASACUAS AND/OR ADRIANA PARAMO

Social Security #: _____

Contract Date: MARCH 16/05

Mailing Address: 4494 FOXTAIL LN , WESTON, FL 33331

| Home Telephone No. | Work Telephone No. | Fax Number | E-mail |
|---|---|---|---|
| 954 588 2884 | | 954 888 6349 | |

Condominium Unit Number: B28   Closing Date: **upon completion** or subject to Paragraph 28.
2803

In consideration of the purchase price specified below, the mutual covenants and benefits provided for herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, the parties hereto do hereby agree as follows:

1. **GENERAL.** Seller agrees to sell, and Purchaser agrees to purchase, in accordance with the terms and conditions of this Contract for Purchase and Sale ("Contract"), the Unit referenced above ("Unit") of AVENUE, A CONDOMINIUM ("Condominium"). The Condominium is or shall be created pursuant to the Declaration of Condominium for AVENUE, A CONDOMINIUM ("Declaration"), which is or shall be recorded in the public records of Miami-Dade County, Florida. The Unit, together with its percentage of undivided interest in the Common Elements of the Condominium, is more particularly described in the Declaration. The Unit shall be purchased for the purchase price and under the terms and conditions set forth below and elsewhere in this Contract.

| | |
|---|---|
| Unit Price: .............................................................................................. ...................................................................................................................... | $ 370,000 |
| Deposit Made This Date: ..................................................................... | $ 38,700. |
| Additional Deposit Due on: Upon execution of contract | $ _____ |
| Additional Deposit Due on: Commencement of Construction but not to exceed 180 days from signing of contract. | $ 35,300 |
| Additional Deposit Due on:_____ | $ N/A |
| Balance Due at Closing.......................................................................... | $ 296,000 |
| Additional Monies Needed:_____............ | $ N/A |

Capital Contribution to Condominium Association equaling twice the monthly maintenance

2. **PURCHASE PRICE.** The total purchase price of the Unit shall be as set forth in Paragraph 1 above, and shall be paid as follows:

All deposits made by Purchaser under Paragraph 1 ("Earnest Money") shall be consideration for Seller reserving the Unit for Purchaser. Notwithstanding anything to the contrary herein, none of the monies received by Seller for upgrades to the Unit, if any, shall be deemed Earnest Money within the meaning of this Paragraph 2 of the Contract. **The Earnest Money shall be deposited in the Escrow Account of Royal Title & Escrow Company ("Escrow Agent")** pursuant to Section 718.202, Florida Statutes and an Escrow Agreement between Seller and Escrow Agent. Such Escrow Account shall be designated for the deposit of earnest monies with respect to units within AVENUE, A CONDOMINIUM, and shall not be commingled with any other funds of Seller. The mailing address of the Escrow Agent is 555 NE 15th Street, Suite 100, Miami, FL 33132. All notices and claims of Purchaser with respect to the aforesaid escrow deposits shall be sent to the Escrow Agent at its address set forth above. Escrow Agent shall give Purchaser a receipt for his deposit upon his request. If Purchaser terminates this Contract without defaulting and as herein permitted, Seller shall refund all deposits. If Purchaser defaults, Seller shall be entitled to retain all deposits. Purchaser will be required to authorize disbursement of escrowed funds by the Escrow Agent to Seller at closing. Prior to disbursing Earnest Money in the event of a default hereunder, Escrow Agent shall give all parties fifteen (15) days notice, stating to whom the disbursement will be made. Any party may object in writing to the disbursement, provided the objection is received by Escrow Agent prior to the end of the fifteen (15) day notice period. All objections not raised in a timely manner shall be waived. In the event a timely objection is made, Escrow Agent shall consider the objection and shall do any or a combination of the following: (i) hold the Earnest Money for a reasonable period of time to give the parties an opportunity to resolve the dispute; (ii) disburse the Earnest Money and so notify all parties; and/or (iii) interplead the Earnest Money into a court of competent jurisdiction. Escrow Agent shall be reimbursed for its costs and expenses, including reasonable attorneys' fees. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs and expenses reimbursed to Escrow Agent. No party shall seek damages from Escrow

Seller _____   Purchaser AP

Agent (nor shall Escrow Agent be liable for the same) for any matter arising out of or related to the performance of Escrow Agent's duties under this Earnest Money paragraph.

(b)   Deposits may be made by personal check (subject to clearance). The balance due at closing must be paid by wire transfer of federal funds only. All payments must be made in United States funds and all checks must be payable on a bank located in the Continental United States. If Buyer fails to pay any deposit on time, and Seller agrees to accept it on a later date (which Seller is not obligated to do), Buyer will pay a late funding charge equal to interest on such deposit at the then applicable highest lawful rate from the date due until the date received and cleared by Seller).

(c)   How Buyer Pays. Buyer understands and agrees that Buyer will be obligated to pay "all cash" at closing. This Agreement and Buyer's obligations under this Agreement to purchase the Unit will not depend on whether or not Buyer qualifies for or obtains a mortgage from any lender. Buyer will be solely responsible for making Buyer's own financial arrangements. Seller agrees, however, to cooperate with any lender Buyer chooses and to coordinate closing with such lender, if, but only if, such lender meets Seller's closing schedules and pays Seller the proceeds of its mortgage at closing.

(d)   Except where expressly provided herein to the contrary or otherwise required by law, all interest earned on Buyer's deposits shall accrue solely to the benefit of Seller, and shall not be credited against the purchase price of the Unit. Buyer further understands and agrees that to the extent that deposit monies are used for construction purposes, said monies are not available for investment and accordingly do not earn interest. No interest will be assumed to be earned, unless in fact said sums are invested in an interest bearing account and do not in fact earn interest.

(e)   The balance of the purchase price and all other amounts due including but not limited to fees and costs shall be paid by certified check at the time of Closing.

3.   DISPOSITION OF DEPOSITS.   If construction, furnishing and landscaping of the Condominium are not substantially complete on the date of this Contract, deposit monies specified in Paragraph 2 hereof up to ten (10%) percent of the purchase price shall be retained in an escrow account by escrow agent and shall not be commingled with other funds of Seller.   Any monies deposited in excess of ten (10%) percent of the purchase price from Purchaser pursuant to the terms of this Contract may be used for construction purpose by Seller.

4.   PRORATIONS.

(a)   Ad Valorem Taxes.

(i)   Purchaser acknowledges that, as of the year in which Closing takes place, the Unit may not have been a separately described and assessed unit of real estate and that, in that event, ad valorem taxes for the Unit for the year in which Closing takes place may be assessed under a tax bill in the name of Seller which covers additional Unit, Should the Unit not be separately described and assessed parcel of real estate, Purchaser agrees to pay Seller at Closing that portion of the tax for the year in which Closing takes place (based on the prior year if the tax bill for the year in which Closing takes place is not yet available) which shall be determined by multiplying the total tax bill by the percent interest in the Common Elements assigned to the Unit in the Declaration and then prorating the product of such multiplication as of the date of Closing. Seller agrees to pay the entire tax bill before it becomes delinquent and, upon written request from Purchaser or any first mortgagee of the Unit, to provide Purchaser or such mortgagee proof of payment. If the amount allocated to the parties is based upon an estimate and the actual bill varies from the estimate, the party who paid too much shall have the right to adjust the prorated amount and within ten (10) days of receipt of notice the party who paid too little shall pay any increased amount based on the actual tax bill to the other party.

(ii)   If, in the year in which Closing takes place, the Unit is a separately described and assessed unit of real estate, then ad valorem taxes applicable to the Unit shall be prorated between the Seller and Purchaser as of the date of Closing. If the amount allocated to Purchaser is based upon an estimate and the actual bill varies from the estimate, the party who paid too much shall have the right to adjust the prorated amount and within ten (10) days of receipt of notice, the party who paid too little shall pay any increased amount and actual tax bill to the other party.

(b)   Assessments.   Purchaser shall pay his or her pro rata share of the common expense assessment levied against the Unit, as provided in the Declaration, for the year in which the Closing shall take place, which common expense assessment shall be adjusted at Closing according to the number of days remaining in the calendar year. Except for that portion of the assessment installment as shall be payable for the month in which the Closing shall take place, which shall be prorated between Seller and Purchaser as of the day of Closing, such adjusted common expense assessment shall be payable to Avenue Condominium Association, Inc. ("Association"), by Purchaser in equal monthly installments, commencing on the first day of the calendar month immediately following the date of Closing, or as otherwise provided by the Board of Directors of the Association. From and after the first day of the first calendar month of the year following the year in which the Closing takes place, Purchaser shall pay all amounts as are assessed against the Unit in accordance with the terms and provisions of the Declaration.

(c)   Contribution to Capital of Association. In addition to all other sums due hereunder, Purchaser agrees at Closing to make a non-refundable contribution to the capital of the Association in an amount equal to two (2) months general assessments on the Unit, at the time of closing.

(d)   Adjustments with the Associations.   Buyer understands that Developer may advance money to the Associations to permit them to pay for certain of their expenses (for example, but without limitation, insurance premiums, common element utility and/or cable or other interactive communication charges and deposits, permit and license fees, charges for service contracts, salaries of employees of the Association and other similar expenses). Seller is entitled to be reimbursed by the Association for its allocated portion of these sums advanced. Upon turnover by Developer, the Association will reimburse Seller out of initial contributions and regular assessments paid

Seller _____   Purchaser _____

by Buyer and other owners as those contributions and assessments are collected, or as otherwise requested by Seller. Seller also, at its election, may receive reimbursement for these payments by way of a credit against any sums it may become obligated to pay to the Association. No initial contributions of purchasers to the Condominium Association may be used for such purposes, however, as long as any guaranty by Seller of such Association's assessments is in effect.

5.     TITLE.

(b)   Title to the Unit shall be conveyed to Purchaser by special warranty deed, and title to the Unit shall be insurable or marketable and free and clear of all encumbrances, except as provided in subparagraph (b) below.

(c)   At least five (5) days prior to Closing, Seller will furnish to Purchaser a commitment for an ALTA Form B Owner's Title Insurance Policy issued by a title insurance company authorized to do business in the State of Florida. It is understood and agreed that Purchaser is purchasing the above referenced Condominium Unit, subject to the items as hereinafter stated, and that title to the Unit which the Purchaser shall acquire pursuant to this Contract shall be good, marketable and/or insurable, subject only to the following:

(i)   Conditions, restrictions, limitations, reservations, dedications, easements, licenses, existing zoning ordinances and other rights of governmental bodies and instruments of record, including, but not limited to, water, sewer, gas, electric and other utility agreements of record.

(ii)   Facts which an accurate survey or personal inspection of the Unit would disclose.

(iii)   Taxes for the current year and subsequent years.

(iv)   Covenants, conditions, restrictions, terms and other provisions as set forth in the Declaration of Condominium for AVENUE, A CONDOMINIUM, and its exhibits and Bylaws and Articles of Incorporation of the Avenue Condominium Association, Inc.

(v)   Any purchase money mortgage executed by Purchaser in connection with the Closing of this transaction.

(vi)   All standard policy exceptions and provisions as may be contained in the A.L.T.A. owner's policy of title insurance and standard exceptions for waterfront property.

(ix)   Any other items as disclosed in the prospectus.

(d)   RESPA Disclosure. As required by the Real Estate Settlement Procedures Act of 1974, Purchaser acknowledges that Seller has not directly or indirectly required Purchaser, as a condition of sale, to purchase either a fee owner's or mortgagee's title insurance policy from any particular title company. Purchaser may elect to obtain such insurance from a company of Purchaser's choice and Purchaser shall pay, at Closing, the title insurance premium for such policy, if Purchaser notifies Seller within fifteen (15) days of the date of this contract. If Purchaser makes said election, then Seller shall credit to Purchaser an amount equal to the promulgated rate for said insurance, less any discounts for reissue credits available to Seller.

6.     CLOSING

(b)   TIME OF CLOSING. This transaction shall close subsequent to Seller's obtaining the temporary Certificate of Occupancy from the proper Governmental agency responsible for issuing said Certificate on the floor in the building in which the Unit is situated. Seller shall give fifteen (15) days written notice of the closing date to Purchaser at Purchaser's address as same appears on the signature page hereof. Issuance of said Certificate for the Condominium shall constitute conclusive evidence of substantial completion of the Unit, as provided in this Contract. The fact that there may be minor items to be corrected or completed shall not delay nor postpone the Closing nor require the holding of any portion of the purchase price in escrow until the completion thereof. In the event the closing is delayed for any reason (except for delay desired, requested or caused by Seller), and Seller elects, at Seller's sole discretion, to reschedule the closing, Purchaser agrees to pay at closing a late funding charge equal to interest, at the then highest applicable lawful rate, on the portion of the purchase price that would have been paid to Seller or to Seller's order (including any mortgage payoffs) if this transaction contemplated herein had been timely consummated as originally scheduled by Seller, from the date Seller originally scheduled closing to the date of actual closing or, at Seller's option, Seller may impose a late charge equal to Fifty and No/100 ($50.00) Dollars to cover administrative and other expenses for each day Seller agrees to postpone the closing. All pro-rations will be made as of the originally scheduled date. Purchaser understands that Seller is not required to reschedule or to permit a delay in closing.

(c)   PLACE OF CLOSING. The Closing of this transaction shall be held at the offices of Seller's attorney, Seller's office, Seller's title agent, or such place designated by Seller.

7.     ADDITIONAL COSTS. A "development fee" equal to one and three quarters percent (1.75%) of the Purchase Price (and of any charges for options or extras now or hereafter contracted for which are not included in the Purchase Price). This fee will be used, in part, to pay for the costs of officially recording the deed in the Public Records of Miami-Dade County (presently, recording fees are $10.00 for the first page of an instrument and $8.50 for each additional page), and the documentary stamp taxes payable in connection with the deed conveying the Unit to Purchaser (presently, documentary stamp taxes are $1.05 for each $100.00 of consideration). The balance of the "development fee" shall be retained by Seller as additional revenue and to offset certain of its development expenses, including without limitation, certain of Seller's administration expenses and Seller's attorneys' fees in connection with the development of the Condominium. Accordingly, Purchaser understands and agrees that the

Seller ___

Purchaser A P

development fee is not for payment of closing costs or settlement services (other than to the extent expressly provided above), but rather represents additional funds to Seller which are principally intended to provide additional revenue and to cover various out –of-pocket and internal costs and expenses of Seller associated with development of the Condominium. In the event of increases either in the recording fees imposed by the County, the documentary stamp tax rates or the minimum risk title insurance premiums, subsequent to the date of this Agreement, or in the event of the imposition of any surcharge or any new governmental tax or charge on deeds or conveyances, Purchaser agrees to pay all such increases, surcharges or new taxes of charges, in addition to the development fee;

In the event Purchaser obtains a loan for any portion of the Purchase Price, Purchaser will be obligated to pay any loan fees, closing costs, escrows, appraisals, credit fees, lender's title insurance premiums, prepayments and all other expenses charged by closing agent, escrow agent, title company or any lender giving Purchaser a mortgage, if applicable. Additionally, if Purchaser obtains a loan and elects to have Seller's Closing Agent act as "Loan Closing Agent" as well, Purchaser agrees to pay, in addition to any other sums described in this Agreement, to Seller's Closing Agent the aggregate sum of $775.00 for the closing agent's title examination, title search and closing fee related to acting as "Lender's Closing Agent." Notwithstanding any of the references in this paragraph to Purchaser obtaining a loan, nothing herein shall be deemed to make the Agreement, or the Purchaser's obligations under the Agreement, conditional or contingent in any manner on the Purchaser obtaining a loan to finance any portion of the Purchase Price, it being the agreement of the Purchaser that the Purchaser shall be obligated to close all cash.

In addition, Purchaser shall reimburse Seller for any utility, cable or interactive communication deposits or hook-up fees which Seller may have advanced prior to closing for the Unit. Purchaser agrees to reimburse Seller and/or Seller's closing agents, for charges incurred in connection with coordinating closing with Buyer and/or Buyer's lender, including, without limitation, charges for messenger expenses, long distance telephone calls, photocopying expenses, telecopying charges and others.

8.    DEFAULT.

(d)  Purchaser's Default. Purchaser shall be in default under this Contract in the event that (1) Purchaser fails or refuses to complete and execute all of the instruments required of Purchaser under this Contract promptly or when requested to do so by Seller or lender, if applicable; or (2) Purchaser fails to or refuses to make timely payment of any payments required under this Contract; or (3) Purchaser in any other manner fails to or refuses to perform his obligations under this Contract. In the event of any such default by Purchaser, Seller shall give Purchaser written notice of such default and allow twenty (20) days from the date of such notice for Purchaser to cure such default. If Purchaser shall fail to cure such default within such twenty (20) day period, the Seller shall, and does hereby have, the unrestricted option to: (1) consider the Purchaser in default under this Contract; (2) retain all sums paid to it hereunder as agreed upon and liquidated damages (not as a penalty) and in full settlement of any claim for damages; and, (3) terminate all rights of Purchaser under this Contract and, thereupon, the parties hereto will be released and relieved from all obligations hereunder. The provisions herein contained for liquidated and agreed upon damages are bona fide provisions for such and are not a penalty, the parties understanding that by reason of the withdrawal of the Unit from sale to the general public at a time when other parties would be interested in purchasing the Unit, that Seller will have sustained damages if Purchaser defaults, which damages will be substantial but will not be capable of determination with mathematical precision and, therefore, as aforesaid, the provisions for liquidated and agreed upon damages have been incorporated into this Contract as provisions beneficial to both parties hereto. Purchaser and Seller recognize the impossibility of measuring Seller's damages if Purchaser defaults. In the event any litigation or arbitration is commenced as a result of this Contract and Seller prevails in such litigation or arbitration, the Purchaser shall also be liable for Seller's attorneys' fees and costs resulting therefrom.

The Seller will give the purchaser written notification of purchaser's default or breach of contract and the opportunity to cure at least 20 days from the receipt of notice to correct the default or breach. If the purchaser loses rights and interest in the unit because of the purchaser's default or breach of contract after 15% of the purchase price, exclusive of interest, has been paid ,the seller shall refund to the purchaser any amount which remains from the payments ,made after subtracting 15% of the purchase price, exclusive of interest, or amount of the seller's actual damages, whichever is the greater.

(e)  Seller's Default. If Seller defaults in the performance of this Contract, Purchaser shall give Seller written notice of such default, and if Seller, within twenty (20) days from receipt of such notice shall fail to take action that would cure the default within a reasonable period of time, and if Purchaser has performed all of his obligations hereunder, then Purchaser shall be entitled all remedies under the law, except consequential damages or special damages.

9.    WARRANTY.

Seller has not made, and hereby expressly disclaims, any and all implied warranties regarding the unit and the condominium property as to its material, workmanship or capacity, including implied warranties of merchantability, habitability or suitability and quality or fitness for a particular purpose, other than those which cannot be disclaimed. No warranties or guaranties are given as to consumer products as defined in 15 U.S.C., Section 2301 et seq. (Magnuson-Moss Warranty Act). Seller has not given and Purchaser has not relied on or bargained for any such warranties. This disclaimer excludes the implied warranty provided by Section 718.203, Florida Statues, to the extent permitted by law. Furthermore, in no event will Seller be liable to Purchaser for any consequential damages including, but not limited to, inability to possess the Unit, inconvenience, or loss of time, due to any of the aforementioned defects.

10.  NON-ASSIGNABILITY. This Contract and Purchaser's interest and rights hereunder are personal to Purchaser and neither said Contract nor the interest or rights of Purchaser hereunder, or any portion thereof, shall be assigned or transferred directly or indirectly, in whole or in part, without prior written approval of Seller. Any such assignment without such written approval of Seller shall be invalid and shall not be binding upon Seller and shall not relieve Purchaser of Purchaser's obligations under this Contract. This Contract shall be binding upon and inure to the

Seller _____    Purchaser _____

15.   <u>CONSTRUCTION BY SELLER</u>. Purchaser fully understands and is aware that Seller anticipates that the buildings will be completed within the estimated completion dates set forth in this Contract, but cannot provide a fixed date for occupancy, by reason of factors influencing the rate of completion such as, but not Limited to, Acts of God, strikes, war, availability of material, order of a court of competent Jurisdiction and the Like. Accordingly, this transaction shall be closed at such time and place as specified in such notice, which date shall be not less notification of Purchaser by Seller, at a time, date and place as specified in such notice, which date shall be not less than fifteen (15) days from the date of such notice.

16.   <u>CONSTRUCTION STATUS</u>.   Purchaser acknowledges that there may be ongoing construction after Closing. Notwithstanding, in accordance with Section 718.104(4)(e), Florida Statutes, Purchaser acknowledges that Seller will not be obligated to give any reduction in the purchase price, or reimburse any expense, or place any funds in escrow due to ongoing construction at the time of Closing.

17.   <u>SURVIVAL OF CONTRACT</u>. All conditions or stipulations not fulfilled at time of Closing shall survive the Closing until such time as the conditions or stipulations are fulfilled

18.   <u>POSSESSION</u>. Possession of the Unit shall be delivered to Purchaser at the Closing.

19.   <u>AVENUE CONDOMINIUM ASSOCIATION, INC.</u>

(a)   <u>Governing Documents</u>. Purchaser acknowledges that the Unit being purchased is a portion of the real property and improvements which have been or will be made subject to the Declaration referred to in Paragraph 1. The nature and extent of the rights and obligations of the Purchaser in acquiring and owning the Unit will be controlled by and subject to the Declaration, as well as the Articles of Incorporation, the Bylaws, and the rules and regulations of the Association. Purchaser agrees to comply with all of the terms, conditions and obligations set forth therein.

(b)   <u>Membership in Association</u>. Upon conveyance of title to the Unit to Purchaser, Purchaser shall automatically become a member of the Association and shall be subject to the assessment obligations and other provisions set forth in the Declaration, including the obligation of the Purchaser to pay a contribution to the working capital of the Association referred to in Paragraph 3(c) of this Contract.

(c)   <u>Amendments to Documents</u>. Purchaser hereby acknowledges and agrees that prior to the Closing, Seller shall have the right to modify, change, revise and amend, without Purchaser's approval, any or all of the documents (other than this Contract), the drafts of which are contained in the Prospectus. In the event the Seller shall make any amendment, modification, change, or revision to the documents or materials contained in the Prospectus, then a copy of such shall be delivered to the Purchaser and, if such change, amendment, revision or modification materially alters or modifies the offering in a manner that is adverse to the Purchaser, then, the Purchaser shall have the option to (1) consent to such, or (2) within fifteen (15) days after receiving a copy of such, terminate this Contract in writing, in which event Purchaser's entire deposit shall be refunded and the parties hereto shall have no rights or liabilities hereunder. In the event Purchaser does not terminate this Contract within said fifteen (15) days, Purchaser shall be conclusively deemed to have consented to the proposed change, amendment, modification, or revision.

20.   <u>BROKERAGE AND AGENCY</u>. Except as set forth below, Purchaser and Seller represent and warrant to the other that each party has not dealt with a broker, agent, or finder in connection with this transaction and Purchaser and Seller covenant and agree, each to the other, to indemnify and hold each other harmless from any and all losses, damages, costs and expenses including, but not limited to, attorneys' fees and court costs that may be incurred or suffered as a result of any claim for any fee, commission, or similar compensation with respect to this transaction made by any person or entity, whether or not such claim for any fee, commission, or similar compensation with respect to this transaction made by any person or entity is meritorious. Seller's broker in this transaction is Fortune   International   Realty   ("Seller's;   Broker").   Purchaser's   broker   in   this   transaction   is _____ ("Purchaser's Broker"). Seller's Broker and Purchaser's Broker shall sometimes be referred to herein together as "Broker".   Purchaser and Seller acknowledge that they have not relied upon any advice, representations or statements of Broker and waive and shall not assert any claims against Broker involving the same.

21.   <u>TIME OF ESSENCE</u>.  Time is of the essence of this Contract.

22.   <u>FORCE MAJEURE</u>. Either party hereto shall be excused for the period of any delay in the performance of any obligations hereunder when such delay is occasioned by cause or causes beyond the control of the party whose performance is so delayed and the time for performance shall be automatically extended for a like period. Such causes shall include, without limitation, all labor disputes, civil commotion, war, warlike operations, invasion, rebellion, hostilities, military or usurped power, sabotage, government regulations or controls, fire or other casualty, inability to obtain any necessary materials or services, or acts of God.

23.   <u>SEVERABILITY</u>. The provisions of this Contract are intended to be independent, and in the event any provision hereof should be declared by a court of competent jurisdiction to be invalid, illegal or unenforceable for any reason whatsoever, such illegality, unenforceability, or invalidity shall not affect the remainder of this Contract.

24.   <u>CONSTRUCTION OF CONTRACT</u>. This Contract concerns the sale of real property located in the State of Florida. This Contract and all of the relationships between the parties hereto, shall be construed and interpreted in accordance with the laws of the State of Florida. Notwithstanding the above, the Purchaser and Seller acknowledge that they have read, understand, and have had the opportunity to be advised by legal counsel as to each and every one of the terms, conditions, restrictions, and effect of all of the provisions of this Contract and every part of the Prospectus, all of which are incorporated herein by reference and made a part hereof, and the Purchaser agrees to the enforcement of any and all of these provisions. It is further agreed that words of any gender used in

Seller _____   Purchaser _____

this Contract shall be held to include any other gender, any words in the singular number shall be held to include the plural wherever applicable, and that captions and paragraph numbers appearing in this Contract are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such paragraph or in any way affect this Contract.

25.  ENTIRE AGREEMENT. This Contract contains the entire agreement between the parties hereto. No agent, representative, salesman or officer of the parties hereto has authority to make, or has made, any statements, agreements, or representations, either oral or in writing, in connection herewith, modifying, adding to, or changing the terms and conditions hereof and neither party has relied upon any representation or warranty not set forth in this Contract. No dealings between the parties or customs shall be permitted to contradict, vary, add to, or modify the terms hereof. Purchaser acknowledges, warrants and represents that this Contract is being entered into by Purchaser without reliance upon any representations concerning any potential for future profit, any rental income potential, tax advantages, depreciation or investment potential, and without reliance upon any other monetary or financial advantage. Purchaser acknowledges that no such representations have been made by Seller or any of its agents, employees or representatives.

26.  OFFER. This Contract, as executed by Purchaser, shall constitute an offer to Seller. Seller may accept the same, if at all, by delivering to Purchaser at least one executed copy of this Contract prior to the time that Purchaser shall notify Seller, in writing, of Purchaser's revocation of this offer. The date of this Contract is the date of acceptance by Seller.

27.  DISCLOSURES REGARDING THE UNIT. Purchaser acknowledges and agrees that he/she has read and understood the disclosures pertaining to the purchase and sale of the Unit contemplated by this Contract and the Condominium as set forth in the Prospectus described as "Disclosures Regarding the Condominium", and incorporated herein by this reference.

28.  PRE-SALE CONTINGENCY, COMPLETION DATE AND CLOSING DATE.  Seller estimates it will substantially complete construction of the Unit, in the manner specified in this Agreement, by July 1, 2007, subject only to extensions resulting from "Force Majeure" or to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. Notwithstanding the foregoing and any other contrary provision of this Agreement, Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause Purchaser's deposits to be refunded in the event that Seller does not procuring qualified purchase contracts with a minimum aggregate gross sales price as required by any loan agreement Developer may have with its lender. Seller must, however, notify Purchaser of such a termination within one (1) year from the date of this agreement for such unit (the "Outside Date"), otherwise Seller will be required to construct the Unit and proceed to perform its obligations under this Agreement. This paragraph shall not delay the effectiveness of the Agreement, which shall be immediate, but, rather, shall be deemed a "condition subsequent" to this Agreement. In the event of Seller's termination of this Agreement pursuant to this paragraph, upon such termination and the return of Purchaser's deposits with any interest earned thereon, Seller and Purchaser will be fully relieved and released from all obligations and liabilities under and in connection with this Agreement. Purchaser agrees that notwithstanding any other provision of this contract the closing will be at a time in accordance with paragraph 6 of this Contract

29.  Florida Law; Severability; Interstate Land Sales. Any disputes that develop under this Agreement will be settled according to Florida law. If any part of this Agreement violates a provision of applicable law, the applicable law will control. In such case, however, the rest of the Agreement (not in violation) will remain in force.

Without limiting the generality of the foregoing, it is Purchaser's and Seller's mutual desire and intention that all provisions of this Agreement be given full effect and be enforceable strictly in accordance with their terms. If, however, any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement, in its entirety, unenforceable, the unenforceable part or parts are to be judicially modified, if at all possible, to come as close as possible to the expressed intent of such part or parts (and still be enforceable without jeopardy to other parts of this Agreement, or this Agreement in its entirety), and then are to be enforced as so modified. If the unenforceable part or parts cannot be so modified, such part or parts will be unenforceable and considered null and void in order that the mutual paramount goal (that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms) can be achieved.

Without limiting the generality of the foregoing, if the mere inclusion in this Agreement of language granting to Seller certain rights and powers, or waiving or limiting any of Purchaser's rights or powers or Seller's obligations (which otherwise would be applicable in the absence of such language), results in a final conclusion (after giving effect to the above judicial modification, if possible) that Purchaser has the right to cancel this Agreement and receive a refund of his deposits, such offending rights, powers, limitations and/or waivers shall be struck, canceled, rendered unenforceable, ineffective and null and void; Under no circumstances shall either Purchaser or Seller have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement (other than language which is intended specifically to create such a cancellation right).

The following sentence will supersede and take precedence over anything else in this agreement which is in conflict with it: If any provisions serve to: (1) limit or qualify Seller's substantial completion obligations as stated in paragraph 28, or (2), limit Purchaser's remedies in the event that such obligations are breached, or (3) grant Seller an impermissible grace period, and such limitations or qualifications are not permitted if the exemption of this sale from the Interstate Land Sales Full Disclosure Act pursuant to 15 U.S.C. §1702(a)(2) is to apply or this Agreement is to otherwise be fully enforceable, then all those provisions are hereby stricken and made null and void as if never a part of this Agreement.

30.  Return of Condominium Documents. If this Agreement is canceled for any reason, Purchaser will return to Seller all of the Condominium Documents delivered to him in the same condition received, reasonable wear and tear accepted. If Purchaser fails to return the Condominium Documents, Purchaser agrees to pay Seller $50.00 to defray the costs of preparation, printing and delivery of same.

Seller_____

Purchaser_AP_

31. SELLER'S FINANCING. Seller may borrow money from lenders for the acquisition, development and/or construction of the Condominium. Purchaser agrees that any lender advancing funds for Seller's use in connection with the Condominium will have a prior mortgage on the Unit and the Condominium until closing. At that time, Seller shall use all proceeds of Purchaser's purchase which are necessary to release the Unit from the then applicable mortgages for the purpose of obtaining those release. Neither this Agreement, nor Purchaser's payment of deposits, will give Purchaser any lien or claim against the Unit of the Condominium. Without limiting the generality of the foregoing, Purchaser's rights under this Agreement will be subordinate to all mortgages (and all modifications made to those mortgages) affecting the Unit or the Condominium even if those mortgages (or modifications) are made or recorded after the date of this Agreement.

32. OTHERS BOUND BY THIS AGREEMENT. If Purchaser dies or in any way loses legal control of his affairs, this Agreement will bind his heirs and personal representatives. If Purchaser has received permission to assign or transfer Purchaser's interest in this Agreement, this Agreement will bind anyone receiving such interest. If Purchaser is a corporation or other business entity, this agreement will bind anyone receiving such interest. If Purchaser is a corporation or other business entity, this agreement will bind any successor corporation or entity. If more than one person signs this Agreement as buyer, each will be equally liable, on a joint and several basis, for full performance of all Purchaser's duties and obligations under it and Seller can enforce it against either as individuals or together.

33. INSPECTION PROCEDURE.

    (a)  Inspection of Seller's Construction and Development Plan. The Unit and other improvements which are to constitute the Condominium may not be complete at the time Purchaser executes this Contract. Accordingly, Purchaser may, during reasonable business hours and by appointment, inspect the complete plans and specifications for the construction of the building, structure and other improvements which shall constitute the Condominium, and the Green Open Spaces, Road Ways, Parking Spaces, Recreation Parcels, and Entry Feature, if any, as more particularly described in the Prospectus. Said plans and specifications may be inspected at Seller's place of business at the address set forth in this Contract. Purchaser agrees that the preliminary Survey, Exhibit "A" to the Declaration which Purchaser received prior to the execution of this Contract was prepared from Plans. Upon completion of the apartment building and improvements on the Condominium Property, said Exhibit "A" will be modified and changed, as required, to be "as built." Said Exhibit No. 1 shall then include the statutory Certificate required and it will be attached as Exhibit "A" to the Declaration of Condominium and duly recorded with same, together with the other Exhibits to said Declaration.

    (b)  Inspection of Unit.

        (i)  Purchaser is required to conduct a personal inspection of the Unit with Seller's representative at a mutually convenient time during Seller's normal business hours no more than three (3) days prior to the scheduled closing date.

        (ii)  If Purchaser is unable to conduct the personal inspection of the Unit with Seller, as required, Purchaser may designate a representative by written notice to Seller. Purchaser will be bound by the actions of the representative.

        (iii)  During the personal inspection, Purchaser or Purchaser's representative and the list as conclusive evidence of the agreed upon work to be performed. When the agreed work has been performed (which will be within a reasonable time considering the availability of materials and the nature of the work to be performed) that will be deemed conclusively that: (1) Seller's obligations have been fulfilled, and (2) any additional items will be the responsibility of the Purchaser.

        (iv)  Any contractor of Purchaser will be allowed access to the Unit for construction work only subsequent to the later of: (1) completion of the personal inspection, (2) signing of the list of inspection items by Purchaser; and (3) closing.

        (v)  It is agreed by the parties to this Contract that the fact that the parties have not completed the inspection, or that items listed on the inspection list have not been addressed by Seller, will not entitle Purchaser to delay closing or to withhold money due Seller at closing, and a refusal to close as scheduled or to pay the full purchase price at closing will constitute a default by the Purchaser. Seller's obligation to perform the work agreed upon in the list of inspection items will survive closing.

        (vi)  Failure of the Purchaser to conduct the personal inspection and complete and sign the list of inspection items by the date established in Paragraph 30(a) of this Contract will be deemed to be: (1) conclusive of Purchaser's acceptance of the Unit in accordance with paragraph 13; and (2) a complete waiver of all objections to defects in workmanship or materials. This will not be deemed to be a waiver of any warranties provided to Purchaser by law.

        (vii)  The provisions of this paragraph shall survive the closing.

34. PROSPECTUS. The condominium documents required by Section 718.504, Florida Statutes to be provided by Seller to Purchaser are defined as the Prospectus together with all exhibits to it. By signing the Receipt for Condominium Documents attached hereto, Purchaser acknowledges receipt of the Prospectus and all exhibits, as well as those disclosures as provided in the prospectus described as "Disclosures Regarding the Condominium" as well as those shown on exhibit "A" of this contract.

35. RADON GAS DISCLOSURE. The following disclosure is required by Section 404.056(8), Florida Statutes, for all Contracts for Sale and Purchase of any building in Florida: "Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are

Seller _____               Purchaser _____

exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit."

36. INSULATION; ENERGY EFFECIENCY.  Seller has advised Buyer, as required by the rules of the Federal Trade Commission, that it intends, currently, to install in connection with the Unit, the following insulation:

| Exterior Walls | Type | Thickness | R-Value |
|---|---|---|---|
| Roof | Foil | ¾ inches | R-4.2 |
| Boundary walls | Blown | 9 inches | R-30 |
| Between units | Foil | | R-4.2 |
| | | ¾ inches | |

Seller has the right to substitute insulation so long as the R-value is equal to or greater than that set forth above.  Purchaser understands that the aforementioned R-values are supplied by the manufacturer, and Seller will have no liability if the R-value is, in fact, different than that indicated.

To the extent required by applicable law, Purchaser may have the Condominium building's energy efficiency rating determined.  Purchaser acknowledges receipt of the Department of Community Affairs' brochure regarding energy efficiency ratings.

All insulation and energy efficiency rating information is subject to Seller's general right to make changes in Seller's Plans and Specifications and to applicable limitations of Seller's liability to Purchaser.

37. DAMAGE BEFORE CLOSING.  If Unit is damaged by fire or other casualty after this Contract takes effect but before Closing, Seller shall be responsible for the loss.  But if damage occurs after the Closing on the first Unit in the condominium, Purchaser or Condominium Association must make repair the Unit.

38. SPECIAL STIPULATIONS.  The following stipulations, if in conflict with any preceding provision, shall control:

(a)  Exhibits and Addenda.  The Exhibits and/or Addenda that are attached hereto are by this reference made a part hereof.

(b)  Statement by Salesperson.  Seller and Seller's officers/employees are not responsible for, or bound by, any statement, representation and/or Contract by a salesperson or other agents unless such statement, representation and/or Contract is in writing and signed by one of Seller's authorized officers.  .PLEASE ACKNOWLEDGE THAT IN MAKING THIS PURCHASE PURCHASER IS NOT RELYING UPON ANY STATEMENT, REPRESENTATION OR CONTRACT MADE BY A SALESPERSON OR AGENT (EXCEPT AS MAY BE IN WRITING AND SIGNED BY ONE OF SELLER'S AUTHORIZED OFFICERS) BY PLACING PURCHASER'S INITIALS ON THIS PAGE.

(e)  Seller's Reserved Right to Marketing Strategy.  Seller reserves the right to implement any legal marketing program as deemed necessary to market Units within this project.  This includes, but is not limited to, the use of model Units, signs, flags, banners, special on-site events, media advertising, modifications of model and production Units, etc.  Seller also reserves the right to price Units at the current market value in an effort to sell Units. There are other marketing strategies and incentive plans not noted herein which Seller reserves the right to implement or discontinue.  Purchaser hereby acknowledges Seller's rights as stated above.

(f)  Private Street.  The streets, alleys and driveways located within the overall development are private streets, alleys and driveways and will be maintained by the Association.

(g)  Estimated Budget.  The Condominium Association budget provided to Purchaser is based on estimated expenses only and may increase or decrease significantly when the actual expenses of the Condominium Association become known.

(i)  Model Unit/Sales Office.  For the purposes of completing the sales promotion of the Condominium and until the sale of all Units in the Condominium, the Seller, its successors and assigns, is hereby given the full right and authority to maintain or establish on the Condominium Unit and Common Elements such models, sales offices, banners, trailer, balloons and advertising signs, if any, as Seller may deem necessary in its sole discretion, together with the right of ingress and egress to the Common Elements in connection therewith.

(j)  Recording.  Purchaser shall not record the Contract in the public records of Miami-Dade County, Florida.  The recording by Purchaser of the Contract shall constitute a default by Purchaser.

(k)  Captions and Headings.  Captions and paragraph headings contained in the Contract are for convenience and references only and in no way define, describe, extend or limit the scope or interest of the Contract nor the interest of any provision hereof.

(l)  Clerical Errors.  The Purchaser(s) agree(s), if requested by the Seller, to fully cooperate in correcting any clerical errors as may appear in the Contract.

(m)  Counterparts and Facsimile.  This Agreement may be executed in one or more counterparts and by facsimile, each of which shall be deemed an original, and said counterparts shall constitute the same instrument.

Seller _____

Purchaser _____

39. Miami-Dade County Ordinance 93-21. Pursuant to the mandates of Miami-Dade County Ordinance 93-21 and the provisions of Chapter 11C of the Metropolitan Miami-Dade County Code, Purchaser is hereby advised, and acknowledges and agrees, that the Unit is located in (I) a coastal high hazard area, and (ii) a special flood hazard area. If the Unit is below the applicable flood elevation level and is substantially damaged or substantially improved, as defined in Chapter 11C of the Metropolitan Miami-Dade County Code, it may, among other things, be required to be raised to the applicable flood elevation level.

40.   ADDITIONAL DISCLOSURES.

Property Tax Disclosure.   BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

Chapter 558, Florida Statutes.   CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR UNIT OR CONDOMINIUM. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT, A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

Construction Industries Recovery Fund.   PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRIES RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIC VIOLATIONS OF FLORIDA LAW BY A STATE-LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS:   (850) 487-1395; CONSTRUCTION INDUSTRY LICENSING BOARD, 1940 N. MONROE STREET, TALLAHASSEE FL 32399.

41.   THIS CONTRACT IS VOIDABLE BY PURCHASER BY DELIVERING WRITTEN NOTICE OF THE PURCHASER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS CONTRACT BY THE PURCHASER, AND RECEIPT BY PURCHASER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM BY THE SELLER UNDER SECTION 718.503, FLORIDA STATUTES. THIS CONTRACT IS ALSO VOIDABLE BY PURCHASER BY DELIVERING WRITTEN NOTICE OF THE PURCHASER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF RECEIPT FROM THE SELLER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE PURCHASER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. PURCHASER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER THE PURCHASER HAS RECEIVED ALL OF THE ITEMS REQUIRED. PURCHASER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

42.   ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

43.   YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER UNTIL MIDNIGHT OF THE FIFTEENTH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT.

NOTE:   Before Purchaser signs this Agreement, Purchaser should read it and the Condominium Documents carefully. Buyer is advised that this Agreement contains references to certain closing costs (paragraph 7), information regarding selling agents, strict limitations on Purchaser's rights upon Seller's default (paragraph 8), disclaimers of warranty liability (paragraph 9), and right of seller to make changes in the offer made to Purchaser (paragraphs 15, 16, 20). Purchaser is further advised that the Condominium Documents contain other important information, including, but not limited to, information regarding the schedule and other details for the turnover of control of the condominium association to unit owners other than the developer and the right to cancel certain contracts affecting the condominium association before control is transferred to unit owners other than the developer. Seek professional advice.

If Purchaser voids this Contract in accordance with this provision, Purchaser shall receive a full refund of all Earnest Money collected and held by Escrow Agent, only after Escrow Agent verifies that such Earnest Money has been deposited into Escrow Agent's escrow account, and that the sums that have been deposited have cleared the Escrow Agent' banking institution. Escrow Agent may demand proof of clearance in the form of a cancelled check or other proof acceptable to Escrow Agent

Receipt of deposit in the sum of $_____ is hereby acknowledged
by: _____

This Contract is subject to a manager's approval and supersedes any previous contract. The authorized representatives on behalf of IMICO BRICKELL, LLC, are _____

Seller _____

Purchaser _____

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A PURCHASER OR LESSEE.

YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER UNTIL MIDNIGHT OF THE FIFTEENTH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT.

IF YOU DID NOT RECEIVE A PROPERTY REPORT PREPARED PURSUANT TO THE RULES AND REGULATIONS OF THE OFFICE OF INTERSTATE LAND SALES REGISTRATION, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, IN ADVANCE OF YOUR SIGNING THE CONTRACT OR AGREEMENT, THE CONTRACT OR AGREEMENT OF SALE MAY BE CANCELLED AT YOUR OPTION FOR TWO YEARS FROM THE DATE OF SIGNING.

ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER OR ESCROW AGENT PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER AND ESCROW AGENT IS AUTHORIZED TO RELEASE SAME UPON DEVELOPER'S REQUEST.

SELLER:   IMICO   BRICKELL,   LLC,   A
DELAWARE LIMITED LIABILITY COMPANY

X _____
PURCHASER

BY: _____
Authorized Representative

X _____
PURCHASER

Date: 3-16-05

Date: 4/9/05

Seller _____

Purchaser _____

# EXHIBIT "3"

The North 100 feet of Lot 6, in Block 100 South, BRICKELL'S AMENDED ADDITION TO THE MAP OF MIAMI, more particularly described as follows:

Begin at the Southeasterly corner of lot 5, Block 100 South, Brickell's Amended Addition to the Map of Miami, and run Southwesterly along the Westerly side of Brickell's Avenue 100 feet; thence in a Westerly direction at right angles with Brickell Avenue at a distance of 350 feet more or less to S.E. Miami Road, formerly Miami Avenue; thence in a Northerly direction and along the Easterly side of S.E. Miami Road, formerly Miami Avenue, 100 feet; thence in an Easterly direction 350 feet, more or less, to the Point of Beginning on Brickell Avenue, all according to the Plat thereof recorded in Plat Book B, at Page 113, of the public records of Miami–Dade County, Florida.

AND

The South 100 feet of the North 200 feet of Lot 6, Block 100 South, BRICKELL'S AMENDED ADDITION TO THE MAP OF MIAMI, according to the plat thereof, as recorded in Plat Book B, at Page 113, of the Public Records of Miami–Dade County, Florida.

AND

Lot 21, Block 100 South, BRICKELL'S AMENDED ADDITION TO THE MAP OF MIAMI, according to the Plat therof recorded in Plat Book B, Page 113, of the Public Records of Miami–Dade County, Florida.

LESS THEREFROM ALL THE FOLLOWING DESCRIBED PROPERTY:

A portion of Lot 21, in Block 100 South, BRICKELL'S ADDITION TO THE MAP OF MIAMI, according to the Plat thereof, recorded in Plat Book B, Page 113, of the Public Records of Miami–Dade County, Florida, being more particularly described as follows:

Begin at the Northwest corner of said Lot 21; thence run South 77 degrees 06 minutes 40 seconds East along the North line of said Lot 21 for a distance of 7.70 feet to a point of intersection with the East line of the WEst 7.70 feet of said Lot 21; thence run South 12 degrees 55 minutes 45 seconds West along the East line of the WEst 7.70 feet of said Lot 21 for a distance of 5.00 feet to the point of curvature of a circular curve to the right; thence run Southwesterly along the arc of said circular curve to the right having a radius of 230.00 feet, through a central angle of 11 degrees 16 minutes 58 seconds, for an arc distance of 45.29 feet to a point of intersection with the South line of said Lot 21; thence run North 77 degrees 06 minutes 40 seconds West along the South line of said Lot 21 for a distance of 3.25 feet to the Southwest corner of said Lot 21; thence run North 12 degrees 55 minutes 45 seconds East along the WEst line of said Lot 21 for a distance of 50 feet to the Point of Beginning.

AND ALSO LESS:

A portion of Lot 6, in said Block 100 South, BRICKELL'S AMENDED ADDITION TO THE MAP OF MIAMI, being more particularly described as follows:

Begin at the Northwest corner of said Lot 6; thence run South 77 degrees 06 minutes 40 seconds East along the North line of said Lot 6 for a distance of 3.25 feet to a point of intersection with a circular curve concave to the Northwest, the center of which bears North 55 degrees 47 minutes 17 seconds West; thence run Southwesterly along the arc of said circular curve concave to the Northwest, having a radius of 230.00 feet, through a central angle of 3 degrees 35 minutes 05 seconds, for an arc distance of 14.39 feet to a point of intersection with the West line of said Lot 6; thence run North 12 degrees 55 minutes 45 seconds East along the WEst line of said Lot 6 for a distance of 14.01 feet to the Point of Beginning.

Containing 77,566 Square Feet or 1.78 Acres more or less (by calculations).

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Adriana Paramo and Abraham Casallas

**DEFENDANTS**

Imico Brickell, LLC, a Delaware limited liability company et al.

**(b)** County of Residence of First Listed Plaintiff   **Broward County, FL**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Miami-Dade County, FL**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan Kline, P.A.
2761 Executive Park Drive
Weston, Florida 33331
(954) 659-1919  Ext. 150

Attorneys (If Known)

**(d)** Check County Where Action Arose: ✓ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

*[handwritten: Dade 08-20458-CIV-Huck Simonton]*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
✓ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 810 Selective Service |
| ■ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ✓ NO      b) Related Cases ☐ YES ✓ NO

JUDGE                          DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity):**

15 U.S.C. 1701 at. seq. also know as The Interstate Lands Sales Full Disclosure Act.

LENGTH OF TRIAL via _3_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 115,200.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ✓ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  February 19, 2008

FOR OFFICE USE ONLY
AMOUNT $350.00   RECEIPT # 975354
*[handwritten: 02/21/08]*